DAVID CARNEGIE & another *vs.* JAMES MORRISON & another.

⁹. the agent, in Boston, of M. & Co. bankers in London, gave B. of Boston this letter, addressed to them : " Mr. J. B. having requested that a credit may be opened with you for his account, in favor of C. & Co. of Gottenburg for £ 3000, I have assured him that the same will be accorded by you on the usual terms and conditions." B. transmitted this letter to C. & Co. at Gottenburg, to whom he was indebted, and requested them to value therefor, at ninety days' sight (the usual time of drawing upon London from Gottenburg), and pass the same to his credit. C. & Co. drew a bill on M. & Co. accordingly, which they refused to accept or pay.

*Held,* that the contract of M. & Co. was governed by the law of this Commonwealth, and that, by this law, C. & Co. might maintain an action in their own names, against M. & Co. for breach of the contract.

*Held,* also, that the above facts would not support a count on a bill accepted by M. & Co.

*Held* further, that C. & Co. had not released M. & Co. by becoming parties to B.'s assignment for the benefit of his creditors, under *St.* 1836, *c.* 238, and filing their account with his assignee, claiming for said £ 3000, only on condition that they should not recover it of M. & Co.

THIS was an action of assumpsit, in which the plaintiffs counted on a written agreement of the defendants to accord a credit, and also on an accepted bill of exchange. The money counts were added. The case was tried before *Putnam,* J. and the following are the facts and documents, that were in evidence, so far as they relate directly to the points decided by the full court :

The defendants are bankers in London, and Francis J. Oliver, at the time of the transactions hereinafter stated, was their general agent in Boston. In March, 1837, John Bradford of Boston was indebted to the plaintiffs, who are merchants in Gottenburg, in a large sum for iron sold and delivered, and he procured from said Oliver the following letter of credit : " Boston, 4 March, 1837. Messrs. Morrison, Cryder & Co. London Mr. John Bradford of this city having requested that a credit may be opened with you for his account in favor of Messrs. D. Carnegie & Co. of Gothenburg for three thousand pounds sterling, I have assured him that the same will be accorded by you on the usual terms and conditions. Respectfully your obt. serv't

FRANCIS J. OLIVER."

" For £ 3000."

At the same time, Oliver took from Bradford this receipt and engagement : " Boston, March 4, 1837. Received of F. J. Oliver, attorney of Morrison, Cryder & Co. of London, the original letter of credit for £3000 sterling, of which the preceding is a copy ; in consideration whereof, I hereby pledge myself to cover at maturity the amount of all drafts that may be drawn on my account by virtue of said letter of credit, together with all charges on the same, by remittances to said Morrison, Cryder & Co. in London, in good bills of exchange on England, bearing my indorsement, giving said Oliver a note of such bills at the time they are remitted.     JOHN BRADFORD."

On the same day, Bradford wrote to the defendants, informing them that Oliver had granted him a letter of credit in favor of the plaintiffs, for £3000, which he should forward to the plaintiffs by the packet of March 8th, and requesting the defendants to accept the plaintiffs' drafts for that amount. Bradford also, on the same day, wrote to the plaintiffs, enclosing the letter of credit, and requested them to value for the amount of £3000, at ninety days' sight, and pass the same to his credit. On the 18th of April following, the defendants wrote to the plaintiffs thus : " We have received a letter from Mr. John Bradford of Boston, of 4 March, requesting us to confirm to you a credit of £3000 on his account ; but, under the very peculiar circumstances of the times, we regret that we cannot comply at present with his wishes." On the 26th of the same April, the plaintiffs drew a bill on the defendants for £3000 pounds sterling, at ninety days' sight, payable to Messrs. Denison, Heywood, Kennard & Co. This bill was presented for acceptance, on the 6th of May, and for payment, on the 7th of August, following ; but it was neither accepted nor paid by the defendants, and was thereupon protested.

At the time when the aforesaid letter of credit was given by Oliver, he knew that Bradford was indebted to the plaintiffs, and that he wished to remit to them in payment on account. Bradford had before frequently obtained letters of credit from Oliver for the purpose of remittance in payment to the plaintiffs, and for other purposes, (to the amount, in the whole, of forty or fifty thousand pounds sterling,) which had been honored and paid.

Bradford was indebted to the plaintiffs, when this last letter of credit was given, in a much larger sum than £3000, which was payable, from time to time, during the summer of 1837.

The defendant's commission for according credit was one per cent., and Bradford gave security to Oliver.

The usual time of drawing upon London from Gottenburg s at ninety days' sight.

After the aforesaid evidence was given by the plaintiffs, the defendants opened their defence. They contended that the contract, contained in the letter of credit, was to be governed by the law of England, and introduced the depositions of Sir Frederick Pollock, and of Matthew Davenport Hill, Esq. English barristers, " to show that, by the law of England, there was no contract between the plaintiffs and defendants ; and that the aforesaid letter did not amount to an acceptance of a bill of exchange drawn in pursuance of it."

The defendants also proved that said Bradford failed on the 24th of April, 1837, and assigned all his property, on that day, for the benefit of his creditors, under *St.* 1836, *c.* 238 : That the plaintiffs signed that assignment, at the same time filing with the assignee their account against Bradford, " in which they claimed conditionally for the £3000 sued for in this action, in case they should not realize it of the defendants, and for the remaining balance absolutely ": That the plaintiffs subsequently received a dividend upon said remaining balance, at the same time declining to receive a dividend on said £3000. The defendants contended that the plaintiffs, by these acts, released their claim against the defendants ; but the judge ruled that they had not.

By consent of the parties, a verdict was taken for the plaintiffs, subject to the opinion of the whole court upon a report of the evidence.

*W. Phillips*, (*B. Rand* was with him,) for the plaintiffs. This case involves the consideration of the *lex loci* and the *lex fori*. The *lex loci* of a contract is not necessarily the law of only one place ; it is the law of all the places to which, and to the purposes for which, it has reference. A policy of insurance,

charter-party, bill of lading, bill of exchange, and the warranty of seaworthiness of a ship, each has reference to the laws and usages of divers places at which the contract contemplates that something is to be done by either of the parties. The *lex loci* of a contract does not change. It is the same, whether the remedy be sought in one place or another. The *lex fori* consists of the forms and modes of proceeding, and species of remedy, in the particular tribunal before which the parties may come. Upon the *lex loci,* i. e. the law of some one particular place, or some divers particular places, depend 1st. the nature of a contract; 2d. its validity or obligatory force ; its giving a right or interest on one hand, and, on the other, imposing an obligation ; which, in the present case, depends on the law of Massachusetts, England or Sweden, or of two or all of them ; 3d. the construction or interpretation of the contract ; what it means and what is to be done ; 4th. its effect ; 5th. its extinguishment. *Scoville* v. *Canfield,* 14 Johns. 338. Such, in general, is the province of the *lex loci.*

As to the meaning of the contract, in the present case, there can be no doubt ; whether it be in erpreted by the law of Massachusetts, England or Sweden, it will mean, " we agree to accept on presentment, and pay at maturity, a bill of exchange to be drawn by Carnegie & Co. for £3000, at ninety days from sight "; or, in other words, " we have, by our arrangement with Bradford, £3000, subject to the order of Carnegie & Co." This is the plain meaning.

It is admitted by the defendants, that this is a valid contract, but not with the plaintiffs. There is a sufficient consideration, viz. Bradford's agreement to supply funds to meet the drafts ; the commissions paid by him to the defendants on £3000 ; the balance due from Bradford to the plaintiffs ; the credit given by the plaintiffs to Bradford, on the 26th of April, for the amount in question, by drawing at ninety days' sight. Here there is a valid contract to avail the parties to it and directly interested in it, whoever they may prove to be. All this is determinable by the *lex loci contractus ;* that is, by the law of some one place, or some divers places, as distinguishable from the *lex fori :* And

all this ought to be determined in the same way, wherever the contract is brought in question.

It is intended by the contract, on the face of it, that the plaintiffs shall be interested in and parties to it. It was intended to be transmitted to them at Gottenburg, and they were there to take the first step towards the execution of it; viz. to draw a bill, and forward it for acceptance and payment. This was the condition on which the liability of the defendants was to depend; for they were liable only on the bill being drawn. The contract also contemplated that the plaintiffs might negotiate the bill; this being one of the incidents of such an instrument.

It will be said that the plaintiffs may be mere agents in the transaction. But this is not to be presumed. As they appear, on the face of the contract, to be interested, if the defendants allege that the plaintiffs are agents and not interested, this must be shown. Whereas, on the contrary, it is shown that they are the persons really interested : The presumption that they are so arises on the contract, and notice that they are so is therefore fixed on the defendants.

The presumption further is, if Bradford "requests" the defendants to hold £3000 subject to the plaintiffs' order, that the plaintiffs have authorized and requested and agreed with Bradford to make such a request; and that some consideration exists, between the plaintiffs and him, bearing upon the case — as in fact there was — and a knowledge of this is carried home to the defendants. The defendants thereupon, on receipt of a consideration from Bradford, with which they were satisfied, (whatever it may have been,) acknowledge that they have in their hands the amount in question, subject to the plaintiffs' order. On this acknowledgment being forwarded, the defendants were bound, unless the plaintiffs disclaimed the transaction.

Where a valid simple contract, as this is admitted to be, bears on its face, as this does, that it is made in favor of a party and in his behalf, on a sufficient consideration applicable to the contract, whencesoever that consideration may have come, and the party, in whose favor and behalf it is made, assents to, adopts and acts upon it, as the contract imports or requires, he

is a party to that contract.    There may be decisions to the contrary ; but if there are, they are opposed to the general current of jurisprudence.    How far we may go, by evidence aliunde, to show who the party interested is, we need not inquire : for here we have such party named in the contract.

The same instrument may be, and often is, a contract by one person with divers others, who, if their interest and damage be joint, have a joint action ; if separate, and so it appears by the contract, they have separate actions.    The question is, what does the contracting party undertake to pay or do, and to whom, and for whose benefit ?    It is not material that a contract in an epistolary form should be addressed to the person with whom it is intended to be made.    *Lawrason* v. *Mason*, 3 Cranch, 492 Letters of credit are very frequently not so addressed.

That the plaintiffs are parties to this contract appears from the fact, that in a bill in chancery upon it they must be joined. There is sufficient privity of contract and consideration between these parties.    Com. Dig. Action of Assumpsit, B. 1.    *Miller* v. *Drake*, 1 Caines, 45.    *Townsley* v. *Sumrall*, 2 Pet. 182.

That this action is supported by our own jurisprudence appears beyond all doubt.    22 Amer. Jurist, 16 – 20.    *Hall* v. *Marston*, 17 Mass. 575.    *Felton* v. *Dickinson*, 10 Mass. 287.    *Arnold* v. *Lyman*, 17 Mass. 400.    *Cabot* v. *Haskins*, 3 Pick. 92. *Allen* v. *Williams*, 12 Pick. 297.    *Bridge* v. *Niagara Ins. Co.* 1 Hall, 247.    *Ellwood* v. *Monk*, 5 Wend. 235.    *Schemerhorn* v. *Vanderheyden*, 1 Johns. 139.    *Weston* v. *Barker*, 12 Johns. 276.    *Duval* v. *Trask*, 12 Mass. 156.    *Lent* v. *Padelford*, 10 Mass. 230.    *Watson* v. *Cambridge*, 15 Mass. 290. *Allen* v. *McKeen*, 1 Sumner, 278.    *Lawrason* v. *Mason*, 3 Cranch, 492.    *Hinkley* v. *Fowler*, 3 Shepley, 289.

It is contended by the defendants, that as this contract was to be executed in England, the law of England is to govern, as being the law of the contract, as distinguished from that of Massachusetts.    The plaintiffs contend that the law of England is to govern only as to the *manner* of complying with the contract, so far as it was to be complied with in England ; that is, how, when, and where the bill was to be presented for acceptance and

payment, and accepted and paid. So it is to be governed by the law of Sweden, and the usage between England and Sweden, as to the drawing of the bill. Thus if the law of the place, where a bill is drawn, requires it to be stamped, it must be stamped. Suppose the agreement had been to accept at Rio de Janeiro, Smyrna or Canton; would the validity and construction of a contract made in Boston, in such case, be governed by the Brazilian, the Turkish or the Chinese law? A charter-party is often to be fulfilled and complied with, by the parties on both sides, in divers countries and places. The law of which of those countries and places do the defendants say is to govern as to its validity and construction? It was never heard of that a party must go abroad to ascertain the validity or the construction of such a contract. We go abroad, in such case, for the usage in the various places contemplated in the contract, as to the manner in which it is to be performed there. In this respect only does such a contract refer to the laws of those places; not for the purpose of ascertaining whether the party is bound, and to what effect, in substance and essentially, he is bound. Suppose a contract of this description must, in England, be under seal; a seal is not therefore required here, though the contract is to be, either partly or wholly, complied with in England *Vidal* v. *Thompson*, 11 Martin, 23. *Thompson* v. *Ketcham*, 8 Johns. 189. *Powers* v. *Lynch*, 3 Mass. 77. *Slacum* v. *Pomery*, 6 Cranch, 221. Story's Conflict of Laws, §§ 277. 327.

It is a general rule, that the drawer, indorser and acceptor of a bill are respectively liable for damages, according to the law of the place of drawing, indorsing or accepting, wherever the bill may be payable. *Hicks* v. *Brown*, 12 Johns. 142. A party is not to go to England, France or Germany to learn the meaning of the words used in a contract made with him in Boston. The validity, obligatory force and construction of this contract must be the same as if the defendants and plaintiffs resided in Boston. The law of Massachusetts is that of the contract, to these purposes. *Depau* v. *Humphreys*, 20 Martin, 1. *Whiston* v. *Stodder*, 8 Martin, 95. *Morris* v. *Eves*, 11 Martin, 730.

Can a man make a valid contract with a party in Boston, to do something in some foreign place, and receive pay for so doing, and then upon damages being demanded of him in Boston for not doing it, say " I do not know you ; there is no privity between us ;" on the ground that such would be the construction in such place ?

Suppose a contract to pay in divers places.  Which of those places gives the law of the contract, (according to the defendants' position,) when by the law of one it would be valid, and by that of another void ; or where the construction would not be the same in any two of those places ?

The jurisprudence of England presents some diversity of decisions and authorities on the question whether a third party, in whose favor a simple contract is made, can maintain an action upon it.    See 1 Vin. Ab. Actions [of Assumpsit,] *Z.* 1. 5. 8. Com. Dig. Assumpsit, E. a. & Hammond's *note.*   Chit. Con. (Perkins's ed.) 45 *a.* 46.   1 Chit. Pl. (6th Amer. ed.) 5. 6. *Garrett* v. *Handley*, 4 Barn. & Cres. 664.  *Carnegie* v. *Waugh*, 2 Dowl. & Ryl. 277.  *Lilly* v. *Hays*, 5 Adolph. & Ellis, 548. The preponderance of authority seems to be in favor of such party's maintaining an action in his own name.    The last case on this point, that has been found, (*Lilly* v. *Hays, ubi sup.*) was decided in November, 1836, only four months before the date of the contract now in suit.

The plaintiffs submit that this letter of credit supports the count on an acceptance of the bill drawn by them on the de fendants.   *Pillans* v. *Van Mierop*, 3 Bur. 1663.   *Coolidge* v. *Payson*, 2 Wheat. 66.  *Schimmelpennich* v. *Bayard*, 1 Pet. 264.

The plaintiffs have not released the defendants by signing Bradford's assignment.  The 8th section of *St.* 1836, *c.* 238, in spirit, if not in terms, would have prevented this effect, even if the plaintiffs had made their claim absolute on the assignee. By making that claim provisionally only, they have, however, made it unnecessary to inquire into the effect of that section .

*B. R. Curtis*, (*C. P. Curtis* was with him,) for the defendants.   I. The plaintiffs have released their cause of action, by becoming parties to Bradford's assignment. It is argued that *St*

1836, *c.* 238, § 8, saves from the operation of such release all claims on partners, joint contractors, indorsers and sureties; and that the defendants are sureties for Bradford. The defendants deny that they are his sureties. They contracted, for a commission, to accept bills drawn on his account; but even if they had accepted them, they would not have been sureties. Under *St.* 49 Geo. III. *c.* 121, accommodation acceptors are not sureties. Bayley on Bills, (2d Amer. ed.) 458. *A fortiori*, he is not a surety, who only promises to accept, and that for a valuable consideration.

II. Can this action be maintained in the name of the plaintiffs? The consideration moved from Bradford. It is his promise to remit funds and pay a commission. The promise was made to him. " I have assured *him* that the same will be accorded by you," is the language of the letter. Whether he had *the whole* beneficial interest in the promise or not, he had *a* beneficial interest. There is no case in which it has been held that an express promise to A., from whom the whole consideration moves, to do an act partly for A.'s benefit and partly for B.'s benefit, will support an action by B. *Potter* v. *Yale College*, 8 Connect. 60. *Price* v. *Easton*, 4 Barn. & Adolph. 433. *Blymire* v. *Boistle*, 6 Watts, 182. *Morrison* v. *Beckey*, 6 Watts, 349. But it does not judicially appear that the plaintiffs had *any* beneficial interest. This action is founded on a written contract; and if the defendants made the promise to the plaintiffs, which is declared on, it was in writing and was contained in the letter of credit. Extrinsic oral evidence cannot be resorted to, to enlarge or explain it. All that appears from the letter is, that the plaintiffs were to draw the bills; but this might be done as agents of Bradford. And as it appears that Bradford procured the letter of credit; that he was to pay a commission to the defendants; to remit the funds to reimburse them; and that the bills were to be drawn on his account; there is strong reason to suppose that the bills were to be drawn by the plaintiffs as his agents, and that they would have no other interest in the payment thereof than any other party thereto. The indorsees of the bills might therefore as well bring this action against the defendants, for not accepting them, as the plaintiffs

Thus far the question has been considered as if it were to be determined by the law of this Commonwealth. But this is not the true view of the case. The case is to be governed by the law of England ; and by that law this action cannot be maintained. (1.) The nature, validity, obligation, construction and legal effect of a contract are governed by the law of the place of the contract. Story's Conflict of Laws, 219. *Vancleef* v. *Therasson*, 3 Pick. 12. *Williams* v. *Wade*, 1 Met. 82. (2.) The law of the place of performance of the contract is the law of the contract, and of course governs as to its nature, validity, obligation, construction and legal effect. Story's Conflict of Laws, 233. *Fanning* v. *Consequa*, 17 Johns. 518. *Cox* v. *U. States*, 6 Pet. 203. *Robinson* v. *Bland*, 2 Bur. 1077. The case of *Prentiss* v. *Savage*, 13 Mass. 20, is directly to this point. In the language of Huberus, quoted with approbation by the court of New York (17 Johns. *ubi sup.*) if the contract is to be *executed* in a foreign country, then the place of *making* the contract becomes immaterial. Such is the result of very numerous authorities in the common law, and such is the doctrine of the civilians. Story, *ubi sup.*

The plaintiffs' counsel have attempted to show that this rule does not exist, and that there are many contracts which have relation, for their execution, to different countries ; and it is asked — What law is to govern, in the case of a bill drawn in one country, indorsed in another, and payable in a third ? In the case supposed, there are, in fact, three different contracts ; one by the drawer, another by the indorser, and a third by the acceptor ; and each is to be governed by the law of the place where it is to be performed. *Powers* v. *Lynch*, 3 Mass. 77. In *Vidal* v. *Thompson*, 11 Martin, 23, the mere formalities of the contract were in question. *Thompson* v. *Ketcham*, 8 Johns 189, turned on the party's ability to contract ; and this question of *status* always belongs to the place where the contract is made. Story's Conflict of Laws, 63. In *Hicks* v. *Brown*, 12 Johns 142, the defendant was discharged by the insolvent law of the place of performance, and it was held to be a good discharge. This decision does not conflict with the principles above stated.

*Morris* v. *Eves*, 11 Martin, 730, is aside from the question; for both parties resided in Pennsylvania, and the contract was to be performed there. The case of *Depau* v. *Humphreys*, 20 Martin, 1, is opposed to the whole current of common law authories, and is shown, in Story's Conflict of Laws, 243 *et seq.* to be at variance with the doctrines of the civil and foreign law   A distinction, taken by the court in that case, has been piessed by the plaintiff's counsel; viz. that a contract may have two places, and be governed, as to different particulars, by different laws; and that the place of performance is to govern only as to those particulars which relate to its performance.   I: is shown, however, in Story, *ubi sup.* that no such distinction is to be found in the writings of the jurists on whom the Louisiana court rely, and that the doctrines of other foreign jurists lead to an opposite conclusion.   It seems to be at variance with the grea: principle, which all the common law authorities contain, to hold that an instrument is to be interpreted by one law, in order to determine whether, by the legal effect of its terms, it is a contract with the party plaintiff, and by another law, to determine how it is to be performed.   No allusion to such a doctrine has been found in those authorities; but they all show that the parties shall be deemed to have had reference to the law of the country where the contract is to be performed.   The case at bar places that principle in a strong light.   The instrument is a letter to the defendants in London; written indeed in Boston, but having no more reference to the laws of Massachusetts than to the laws of China; for it was designed to be sent immediately to the plaintiffs at Gottenburg, *there* to be used by them.   It contains an authority which the plaintiffs are to execute in Gottenburg, and a promise which the defendants are to perform in London.   How can a case of clearer reference to the foreign law be framed?

What was the place of performance of this contract?   It is not easy to raise a doubt on this point.   The contract is in the transitory form of a letter, written in Massachusetts, but designed to go out of the country immediately, and to be presented to the defendants in England, where they agree to accept and **pay**

the bills. Whatever they contracted to do was, by the express terms of the contract, to be done in England. The law of England, therefore, is to govern as to the nature, obligation, construction and legal effect of this contract : And the inquiry then is, whether either of these particulars is involved in the question, whether the plaintiffs can maintain this action in their own names. The ultimate question to be determined is, wheth er an action of assumpsit, in the names of the plaintiffs, will lie against the defendants. By our own law, such action will lie, *provided the defendants. have made a simple contract with the plaintiffs.* Have the defendants contracted with the plaintiffs ? This, manifestly, is not a question of remedy, but depends upon the nature, obligation, construction and legal effect of the letter of credit declared on. The plaintiffs' counsel do not attempt to sustain this action on the express words of the contract ; for the defendants expressly promised Bradford only ; but they say that, in *legal effect*, it is a contract with the plaintiffs. And what law is to determine the legal effect of the contract, if not the law of the contract ? which is, in this case, the law of the place of performance. The plaintiffs wish the court to put such an interpretation on this contract as will show it to be a contract with them. They thus pass far beyond a question of remedy, and come to those inquiries which belong to the foreign law. The defendants submit, then, that the law of England is to answer the question whether the defendants have made a contract with the plaintiffs.

The next inquiry is, how is the court to know judicially what the foreign unwritten law is. We answer, by the sworn opin ion of its learned professors. Rev. Sts. *c.* 94, §§ 60, 61. *McRae* v. *Mattoon*, 13 Pick. 53. The defendants produce the depositions of Sir Frederick Pollock and Mr. Hill, very eminent English barristers ; and the clear result of their testimony is, that this letter of credit, interpreted by the law of England, does not amount to a contract with the plaintiffs.

This letter of credit does not amount to an acceptance of the bill drawn under it. 1. This court has never decided that a promise to accept a non-existing bill amounts to an acceptance,

and, not being bound by authority, will not so decide. *Wildes v. Savage*, Circuit Court of the U. S. 1st circuit, October, 1839, which will appear in the 1st volume of Story's Reports. 2. The bill in question is not identified and described by the letter of credit, so as to bring it within the American cases cited by the plaintiffs' counsel. 3. The bill is payable at a certain period after sight ; and this was held by Story, J. in *Wildes v. Savage*, before cited, to be sufficient to prevent the operation of the rule laid down in *Coolidge v. Payson*, 2 Wheat. 66, and other cases. 4. The bill has been duly protested for non-acceptance ; and as the holder had a right to a written acceptance on the bill, if he chose to insist on it, he must be deemed to have waived any other acceptance, by causing the bill to be protested. *Sproat v. Matthews*, 1 T. R. 182. *Bentinck v. Dorrien*, 6 East, 199. 5. This question is to be governed by the law of England ; Story's Conflict of Laws, 238 : And the depositions of Sir F. Pollock and Mr. Hill prove that by the law of England this is not an accepted bill.

SHAW, C. J. A case, involving most of the same questions which arise in the present, was argued at a former term ; but having stood over for consideration, the court have been desirous of hearing the argument in this case, before giving an opinion in the former one. It has now been fully and very ably argued on both sides. It involves questions of much difficulty and of great importance to the mercantile community.

It is an action of assumpsit, brought by Carnegie & Co. mercantile firm at Gottenburg, Sweden, against Messrs. Morrison, Cryder & Co. of London. The action is founded upon a letter of credit given by the defendants, by Mr. Oliver, their general agent residing in Boston, upon the application of Mr. John Bradford, in favor of the plaintiffs, and for the purpose of paying, in part, a large debt due from Bradford to the plaintiffs, for merchandise before shipped to him on credit. The letter of credit is of the following tenor :

[The letter was here set out, as *ante* p. 381.]

It appears by the evidence, that Oliver was the general agent of the defendants in Boston ; that this letter of credit was obtain-

ed upon the application of Bradford, and was immediately forwarded to the plaintiffs, at Gottenburg ; and that notice of it was given to the defendants, at London. Mr. Oliver knew the purpose for which Bradford wanted it. He had often had similar letters of credit from Mr. Oliver before ; all of which have been honored, except one other in favor of Scholfield & Co. which 's now 'n controversy in this court. Mr. Bradford was accustomed to give satisfactory security, from time to time, to Mr. Oliver, and to pay the defendants a commission of one per cent. It also appears that upon the strength of this letter of credit, the plaintiffs drew a bill or bills on the defendants, according to the usual mode of drawing bills at Gottenburg on London, which the defendants declined accepting. Various other circumstances were given in evidence, but this is a summary of the leading facts in the case.

This action, if it can be maintained at all, as between these parties, must be maintained on the letter of credit. But a question meets us at the outset, what law shall determine the rights of the parties in this transaction ? It is obvious that the undertaking of the defendants was, to do some act out of this country. The substance of that undertaking was, to give Bradford a credit for the use and benefit of Carnegie & Co. ; in other words, the substance and effect of that undertaking was, to pay a sum of money to Carnegie & Co. in discharge of Bradford's debt to them, by means of bills of exchange to be drawn by Carnegie & Co. on the defendants, in their own favor, or in favor of their appointee, for their use, in consideration of the promise of Bradford to provide funds to meet those bills, giving them satisfactory security, placed in the hands of their agent, and in further consideration of a commission of one per cent. paid by Bradford.

In considering the nature of this transaction, the inquiry involves two questions ; *first*, whether the transaction in question constitutes a contract, in which the plaintiffs have an interest ; and, *secondly*, whether the interest of the plaintiffs in this contract is of such a character, that they can maintain an action upon it, in their own names. The question, therefore, does not

depend exclusively upon the *lex fori*, although, as the action is brought in this Commonwealth, its laws must determine whatever relates to the remedy.   Supposing that the *lex loci contractus* is also to have a bearing on the question, it must be considered, that some of the rules, applicable to the construction and effect of contracts, are founded in positive law, established by usage or by statute, which each country will establish for itself, according to its own views of convenience and policy, and have a local operation ; whilst others are derived from those great and unchangeable principles of duty and obligation, which are everywhere recognized amongst mercantile communities, and indeed amongst all civilized nations, as lying at the foundation of civil contracts, and must be considered as having the same effect, wherever by the comity of nations contracts made in one country are allowed to be carried into effect by the laws of another. In some states, for instance, a bond made to one or his assigns, is regarded as a negotiable instrument, and creates an obligation to pay to the obligee or any person, who shall legally become the assignee of it.   In others, a note for money, payable to one or order, creates a legal obligation to the payee only, and an indorsee cannot maintain a suit in his own name.   Whether an instrument, made in a particular form, shall have the one or the other construction, will depend upon the positive law of the country which governs it; and such law therefore will determine the nature and legal obligation of the contract created by it ; it is positive law, concurring with, and giving effect to, the act of the parties, which determines the nature and extent of such contract.   But that a party entering into a formal stipulation to pay money, or do some other beneficial act to or for another, shall substantially perform that undertaking, is a great principle of moral as well as legal obligation, and of international as well as municipal law, recognized everywhere.

Taking it as settled, in the present case, that the defendants became subject to a duty or obligation of some kind, the real subject of discussion is, not merely as to the remedy, but whether the facts now in proof constituted a contract between these parties, which may be enforced by an action.

The objection to such an action and the ground of this de
fence are, that the immediate parties to the transaction were
Bradford on the one side, and the defendants on the other ; that
to this transaction the plaintiffs were strangers ; and that as
Bradford acquired some right under it, and had a remedy upon
it against the defendants, their contract must be deemed to be
made with him and not with the plaintiffs. But this position
presupposes that the same instrument may not constitute a con-
tract between the original parties, and also between one or both
of them and others, who may subsequently assent to, and be-
come interested in its execution ; an assumption quite too broad
and unlimited, which the law does not warrant. In a common
bill of exchange, the drawer contracts with the payee that the
drawee will accept the bill ; with the drawee, that if he does ac-
cept and pay the bill, he, the drawer, will allow the amount in
account, if he has funds in the drawee's hands ; otherwise, that
he will reimburse him the amount thus paid : He also contracts
with any person who may become indorsee, that he will pay him
the amount, if the drawee does not accept and pay the bill.
The law creates the privity. So in the familiar case of money
had and received, if A. deposits money with B. to the use of
C., the latter may have an action against B., though they are in
fact strangers. But if C., not choosing to look to B. as his
debtor, calls upon A. to pay him, notwithstanding such deposit
(as he may,) and A. pays him, A. shall have an action against
B. to recover back the money deposited, if not repaid on notice
and demand. The law, operating upon the act of the parties,
creates the duty, establishes the privity, and implies the promise
and obligation, on which the action is founded. *Hall* v. *Mars-
ton*, 17 Mass. 575. So in regard to a very common transac-
tion; when one deposits money in a bank to the credit of a third
person, and forwards him a certificate, or other evidence of the
fact, the bank is regarded as coming under an obligation to pay
the money to the person to whose credit it is thus deposited. So
it is held in England, when the depositary assents to receive the
money, though there is no consideration moving from the plain-
tiff to the defendant. *Lilly* v. *Hays*, 5 Adolph. & Ellis. 548.

We think, therefore, it is no decisive objection to an action by the plaintiffs, that the act done constituted, at the same time, a contract between the defendants and Bradford, on which the latter might provisionally have had a remedy, in case the plaintiffs should not assent to, and enforce the contract, so far as it was intended for their benefit.

From this view of the case, it is manifest that the question whether a particular transaction constitutes a contract, and between whom, upon which one party can have a remedy against another by judicial proceedings, must depend upon the law governing such contract, as well as the law of the *forum* where it is sought to be enforced. The remedy may be sought in the form of an action at law, or a bill in equity, or before any special tribunal, according to the law of the place where it is sought. But the question whether a particular act or instrument constitutes a contract, and between what parties, is previous in its nature, and must generally be settled before any question of remedy arises.

What then is the law of the contract, or in other words, what law determines whether an act done constitutes a contract, and if so, between whom and to what effect ? The general rule certainly is, that the *lex loci contractus* determines the nature and legal quality of the act done ; whether it constitutes a contract ; the nature and validity, obligation and legal effect of such contract ; and furnishes the rule of construction and interpretation. There may, perhaps, be exceptions to this rule ; as where parties happen to meet on a desolate island in a savage country, where the principles of commerce and civilization do not prevail, or where a settled municipal law is not enforced or regarded. Perhaps such would be the construction of a contract between American or European merchants in China, who rather reside on the confines of that empire, than live under its government ; and where they may be presumed to have reference, in their dealings, to the general laws and usages of the commercial world, without regard to the laws of the people with whom they temporarily reside. But a contract, made in one country, may contemplate the execution of deeds or other con-

tracts, making payments or doing other legal acts, in another ; in regard to which, the law of the foreign country, where the act is to be done, will govern the contract ; and the obligation of such contract will bind the contracting party to do all such legal acts, according to the law of the place where they are to operate, so as to have their full legal effect. As if a person in one country should contract to convey land in another ; the general rule being that the *lex loci rei sitœ.* furnishes the rule which reg-· ulates titles and conveyances of real estate, the true construction and legal effect of such contract would be, that the conveyance should be executed in such form as effectually to transfer the title, according to the law of the place where the land lies. If the land were in Massachusetts, where the law requires the execution and acknowledgment of a deed, it would bind the contracting party to execute and acknowledge such deed, though made in a country where, by its municipal law, a deed would not be necessary. If the stipulation be, that the drawee shall accept a bill in a foreign country, and the law of that country require that a valid acceptance shall be in writing, though not required by the law of the place where drawn, it is a contract that the drawee shall accept the bill in writing.

That the transaction now in question constituted a good contract to some purpose, and between some parties ; that it was made on a good, valuable and adequate consideration, and made in Massachusetts, is not contested. Then the rule *primâ facie* is, that the construction and legal effect of this transaction are to be determined by the law of Massachusetts. That is the law which must be regarded, in the first instance, in deciding whether the act done constituted a contract, and if·so, between whom, and to what effect, and must prevail unless the case falls within some exception to the general rule ; and the question is, whether it does. It is true that the parties to this suit are both foreigners, one residing in Sweden, and the other in England. This, however, is immaterial, and only respects the question who may sue and be sued in our courts. By the comity of nations, alien friends are allowed the benefit of our courts in seeking their civil rights, as plaintiffs ; and the defendants, by placing

their property under the control and protection of our government, place themselves within the jurisdiction of our courts. But the immediate actors in the transactions were here. Bradford, the prime mover, who opened and conducted the negotiation, paid the consideration, and caused the obligation to be entered into, was a resident citizen of Massachusetts ; and though in legal strictness he might not be considered as the agent of the plaintiffs, before they had assented to and adopted his act, yet still he so far acted for them, as to procure a stipulation, which, if executed, would enure to their benefit. The other party, though domiciled abroad, were here for the purpose of conducting mercantile and financial business, by their regularly constituted resident agent. The money was paid, or the security given, in Boston, which constituted the consideration for the defendants' undertaking. The negotiation, which terminated in giving the letter of credit, was commenced and completed in Boston.

That some things are referred to foreign laws and usages, in this agreement, is manifest in the instrument itself. The words, " on the usual terms and conditions " are obviously of this character. They refer to the laws and usages both of Sweden and England. All parties of course knew that the credit was to be given by the defendants, by means of bills of exchange, although this is not expressed in terms. Supposing that the object was, that this credit should be afforded by means of bills of exchange, to be drawn by Carnegie & Co. in Gottenburg, on Morrison & Co. in London, the instrument refers to the laws and usages of Sweden, for the mode of drawing, and to those of England for the mode of acceptance ; and the legal effect and obligation of the contract in Boston are, that the parties will respectively conform to those laws and usages, in the performance of their respective acts. But it is not as to the non-observance of any of these, that the question arises. The gravamen of the complaint is, that the defendants have violated the obligation of their contract, in its entire substance. It becomes therefore necessary to inquire, and ascertain more exactly, what that contract, in its legal effect and operation, was. The substance of

the undertaking of the defendants may, we think, be simplified and expressed thus : Whereas John Bradford is indebted to Messrs. Carnegie & Co. of Gottenburg, in the sum of £ 3000, and has requested us to pay them that amount for him, by means of bills of exchange to be drawn on us at London ; we hereby, for value received of him for that purpose, to our satisfaction, promise to accept their bills to that amount, payable to themselves or their order, and pay them accordingly.

The question is, supposing a general failure in the performance of this undertaking, who is entitled to a remedy for sucᵗ breach, and by what law shall this question be determined ? The assurance or promise is in terms made to Bradford ; but the substantial benefit to be derived from the performance of it would be the plaintiffs', and therefore they are damnified by the breach. Bradford had procured the defendants to pay his debt for him to the plaintiffs, for a satisfactory pecuniary consideration, and immediately gave notice thereof, and remitted the contract to the plaintiffs, who assented to and accepted it. It may be fairly presumed, that but for this transaction, Bradford would have adopted some other mode of remittance. Regarding it as a question of principle and not of technical law, it was an undertaking, in which the plaintiffs had an interest, nearly or quite as direct and as great, as if the promise had been in terms to them, or the negotiation had been with them ; or as if the instrument had been a promissory note, procured by Bradford to be made payable to them, in consideration of money paid and security given by him, and such note afterwards remitted to and received by them. Upon these facts, the court are of opinion that the construction, the obligation, the legal effect and operation of this transaction are to be governed by the law of Massachusetts. So far as this transaction constituted a legal and binding contract at all, it was, we think, by force of the law of the place of contract, operating upon the act of the parties, and giving it force as such. The undertaking, it is true, was to do certain acts ɪn England, to wit, to accept and pay the plaintiffs' bills ; but the obligation to do those acts was created here, by force of the law of this State, giving force and effect to the undertaking of the

defendants' agent, and making it a contract binding on them Supposing the law of England had provided that no letter or credit should be issued, unless under seal, or stamped, or attested by two witnesses, or acknowledged before a notary ; is it not clear, that as no such formalities are required by our laws, a letter of credit, made here, would be held good, without such formalities ? We think it would be so held even in England, under the authority of the general rule, that a contract, valid and binding at the place where made, is binding everywhere. There is no reference, tacit or express, in this instrument, to the laws of England, which can raise a presumption, that the parties looked to them as furnishing the rule of law, which should govern this contract. It was, therefore, in our opinion, in legal effect, a contract made in Massachusetts, by parties both of whom were here by their agents, or persons acting for their benefit and in their behalf, and therefore the nature, obligation and effect of this contract must be governed by the law of this Commonwealth.

2. We are then brought to the question, whether by the law of Massachusetts the plaintiffs are entitled to maintain an action upon this contract.

In the case of money had and received, it is conceded, as a settled principle, that if A. receive money of B. to the use of C., though there is no communication between A. and C. and no privity, other than that which arises from the duty of paying, an action will lie in behalf of A. But the consideration, in that case, moves from a stranger. In the case already cited, *Lilly v. Hays*, 5 Adolph. & Ellis, 548, it seemed to be considered, that a consideration moving from the plaintiff is not necessary to support an assumpsit ; and that a consideration, moving from another person, and adopted by the plaintiff, is sufficient. The money was sent by one Wood to the defendant, to be paid to the plaintiff, and the defendant had admitted to a third person, that he had so received it ; but he had had no communication with the plaintiff. Mr. Justice Patteson said, " there is a consideration moving here, through the instrumentality of Wood, the original debtor, to the defendant, as agent for the plaintiff "

Lord Denman thought that the defendant had made himself the plaintiff's banker, to the amount received.

I do not intend to go into a full consideration of all the authorities on this subject; but it may be proper to refer to a few of the leading cases. It seems to have been regarded as a settled point, ever since reports have been published in this State, rather than as an open question to be discussed and considered. The position is, that when one person, for a valuable consideration, engages with another, by simple contract, to do some act for the benefit of a third, the latter, who would enjoy the benefit of the act, may maintain an action for the breach of such engagement.

In *Felion* v. *Dickinson*, 10 Mass. 287, the case was, that a father made a special agreement with a person for the employment of his son, till twenty-one years old; whereupon the employer promised to pay the son $ 200, when he should come of age. The promise was, in terms, to the father; but being for the benefit of the son, it was held that the son might maintain an action upon it. Perhaps the relation of father and son might have had some influence, and been supposed to bring the case more exactly within the principle of the familiar case of *Dutton* v. *Poole*, 1 Vent. 318. But the position is laid down broadly by the court, in general terms, that where a promise is made to one for the benefit of another, he for whose benefit it is made may bring an action for the breach of it. And this position is supported by a citation from Comyns's Digest and Rolle's Abridgment.

*Hall* v. *Marston*, 17 Mass. 575, is a leading and decisive case for the proposition, that where one receives money from another, to the use of a third, the latter may maintain an action for it, though there has been no communication between the depositary and the person for whom it was received, and no assent, on the part of the party receiving it, to pay it over, except that which is to be implied from the act of receiving it with such direction. And yet it seems obvious, from other established principles, that the person, for whose use and benefit the money has been so received, is under no obligation to call on the deposita

ry, but may look to his debtor for payment, as if he had made no such deposit for his benefit. And it seems equally clear, that when the original debtor has thus paid, upon notice to the depositary that the purpose for which the money was placed in his hands has failed, and that the person, for whose use it was deposited, has been paid, and is no longer entitled to it, the depositor, after demand and refusal, could maintain an action for the amount. In such case, the same undertaking on the part of the party receiving the money would give a cause of action, in the first instance to one, and if he should not assent to and adopt it, then to another.

But a case more directly in point, in support of the general proposition, is that of *Arnold* v. *Lyman*, 17 Mass. 400. A debtor, in failing circumstances, placed property, consisting of securities and goods, in the hands of the defendant, and took from him a written agreement, reciting such deposit, and promising to pay certain debts enumerated, and amongst them, that of the plaintiff. After an able argument for the defendant, it was decided that the action was maintainable. The court considered that the consideration was good, although it moved from the debtor of the plaintiff, and not from the plaintiff himself; and although the debtor might have maintained an action upon this promise, had he been compelled to pay his debt to the plaintiff, yet the plaintiff might maintain an action in the first instance, if he elected to affirm the act done in his behalf by the debtor, and avail himself of the promise of the defendant, made for his benefit. The court affirm the general proposition, that he, for whose interest a promise is made, may maintain an action upon it, although the promise be made to another and not to himself. There are several other cases in which this doctrine is recognized.

The court are of opinion that the promise of the defendants, made by the letter of credit, in the present case, comes within the principle of the cases cited. Bradford was indebted to the plaintiffs, and was desirous of paying them ; and he must resort to some mode of remittance. He had funds, either in cash or credit, with the defendants, and entered into a contract with them to

pay a sum of money for him to the plaintiffs : And upon the faith of that undertaking, he forebore to adopt other measures to pay the plaintiffs' debt.   He gave the plaintiffs notice of what he had done, and sent them the instrument as authentic evidence of the fact :  They assented to and affirmed it, as an act d⊃ne in their behalf, and gave the defendants notice thereof, and, conformably to the terms of the letter of credit, drew their bills on the defendants.   The refusal to accept was a breach of the promise thus made, and, in the event that happened, (the insolvency of Bradford,) the plaintiffs lost their debt.   It would be in vain to say, that this promise was not made for the benefit, or (according to the terms of some of the cases) for the *interest* of the plaintiffs.   The result shows that by a compliance with the plain, literal terms of their promise, on the part of the defendants, the plaintiffs would have received their debt.   By a refusal to perform that promise, they have lost it.   They are therefore damnified to the full amount of the sum for which the credit was given.

3.  In putting this decision upon the authority of American cases, and an established course of practice in this Commonwealth, it has become unnecessary to consider, with much attention, the opinions of Sir Frederick Pollock and Mr. Hill, in their depositions taken for this cause, or to determine accurately how far the testimony of learned and eminent counsel is to be considered, in connexion with, or to the exclusion of, the authorities usually cited as evidence of the common law of England.   It is undoubtedly a general rule, that the customary, unwritten law of a foreign country, is to be proved by the testimony of witnesses.   But the peculiar relation in which we stand to the common law of England may require some modification of this rule.   Had it been necessary to ascertain precisely what the present state of the law of England is, upon the point we have been discussing, the opinions of the learned and very eminent counsel, whose depositions have been taken, would be entitled to the highest respect.   It would also be necessary to examine, with more care than we have thought it necessary to do, the case upon which those opinions were given, in order to

be assured that the case stated to them precisely corresponds, in all its essential particulars, with the case actually in judgment, before the court. In a complicated state of facts, it not unfrequently occurs, that the omission or insertion of a circumstance, apparently slight, on a superficial consideration, may have a material influence on the result.

Supposing the law to have settled down in England, as stated by these gentlemen, the point must be considered as, at least, having been long doubtful; as there are respectable authorities the other way. The question is, whether a third person has a right of action on a promise made to another, for his benefit. See the earlier authorities collected, 1 Vin. Ab. Actions of Assumpsit, Z. The question was greatly considered, and decided in the affirmative, in *Dutton* v. *Pool*, 1 Vent. 318, and reported in several other books. In that case, the promise was made to the father for the benefit of a daughter, and the consideration moved from the father. The near relation of the parties was considered as having some influence, though that circumstance does not seem to be relied upon in the digests, where the case is stated as an authority for the general principle. 2 Coventry & Hughes Dig. 1025.

The same general principle was asserted and recognized by Lord Mansfield, in *Martyn* v. *Hind*, Cowp. 443. 1 Doug. 146. And in the case of *Marchington* v. *Vernon*, reported in a note, 1 Bos. & Pul. 101, which was an action by the holder of a bill of exchange, against the assignees of the drawee, on a promise made by the bankrupt to the drawer, that he would honor the bill, Mr. Justice Buller said, that, "independent of the rules, which prevail in mercantile transactions, if one person makes a promise to another for the benefit of a third, that third person may maintain an action upon it." These and similar authorit'es no doubt had their influence in settling the law here, before the period at which the Massachusetts Reports commence. But a considerable course of practice, on both sides of the water, may have insensibly led the judicial tribunals, respectively, to different results, and may account for the diversity of the present law of the wo countries, though flowing from a common origin.

In one respect, the present law of England, as stated by the learned gentlemen in their depositions, is at variance with what seems to be the law of this country ; to wit, that an agreement to accept a bill, either made or about to be made, and so specifically described and designated, as to identify it and distinguish it from all others, shall be deemed an acceptance and may be declared on as such. It is only necessary to refer very generally to the American authorities. *Wilson* v. *Clements,* 3 Mass. 1. *Storer* v. *Logan,* 9 Mass. 55. *Coolidge* v. *Payson,* 2 Wheat. 66. *McEvers* v. *Mason,* 10 Johns. 207. *Goodrich* v. *Gordon,* 15 Johns. 6. *Schimmelpennich* v. *Bayard,* 1 Pet. 264. *Boyce* v. *Edwards,* 4 Pet. 121. *Williams* v. *Winans,* 2 Green, 339. But this point is not material to the present case ; for although the general question was discussed in the argument, whether an agreement to accept, made before or after a bill is drawn, may be treated in mercantile law as an acceptance ; yet upon careful examination, there was no serious ground to contend that the undertaking of the defendants, Morrison & Co., was such an agreement to accept a particular specified bill, as to bring it within the authority of the American cases.

4. It has been contended as another and distinct ground of defence, that the plaintiffs have precluded themselves from the right of recovering against the defendants in this case, by having proved their debt, as a debt due from Bradford, under a commission of insolvency issued against him, under *St.* 1836, *c.* 238. But the court are of opinion that the plaintiffs have not waived their claim against the defendants, by that course of proceeding against Bradford. It appears by the facts proved, that the plaintiffs had a larger debt due from Bradford, and would, therefore, at all events, be creditors under his commission ; that as to this sum of £3000, they made a provisional claim only, that is, they claimed to prove that amount against Bradford's estate, in case they should fail of recovering it of the defendants ; and saving their rights in that respect, such a provisional and alternative claim, we think, was not a waiver of their rights against the defendants. It is obvious that it was not so designed and understood by them ; and if it had the effect contended for, it was

against their intention. But according to the view which we have taken of the rights of the plaintiffs, they did not take the letter of credit in satisfaction and discharge of their debt, but as a means of obtaining payment, *pro tanto.* When satisfied, it would become payment, and would then discharge Bradford, and enure to his benefit, by paying his debt; but not till then. The case of a creditor, holding several persons liable for the payment of the same debt *in solido*, is familiar. The cases of promisors and indorsers, of principal and several sureties, are obvious instances. In general, in cases of bankruptcy, persons so holding several persons liable for the whole amount may prove the whole against the estate of each debtor, taking care to receive but one satisfaction. In such case, proof against one is no waiver of the claim against another; and *a fortiori*, when the claim is conditional only, not waiving the claim against others.

It does not appear whether Bradford has obtained his discharge under the *St.* of 1836, *c.* 238; but if he has, we think it would not operate to the discharge of the defendants. The act provides, § 8, that "no such discharge shall release any person, who may be liable for the same debt, as a partner, joint contractor, indorser, acceptor or surety, for or with the debtor." The case is clearly within the equity, if not within the letter, **of this** provision of the statute.