## COUNTY OF SUFFOLK, ON THE FIRST MONDAY OF JULY, 1807,

**BY ADJOURNMENT FROM THE SECOND TUESDAY OF MARCH PRECEDING,**

### AT BOSTON.

———◆———

PRESENT:

Hon. THEOPHILUS PARSONS, Chief Justice.
Hon. THEODORE SEDGWICK,
Hon. SAMUEL SEWALL, } Justices.
Hon. GEORGE THATCHER,
Hon. ISAAC PARKER,

[MEMORANDUM. At the last annual election in this commonwealth, the Hon. James Sullivan, attorney-general, having been elected by the people to the office of governor, his excellency was pleased to nominate, and, with the consent of the council, to appoint, the Hon. Barnabas Bidwell, of Stockbridge, to the office of attorney-general thus vacated, who entered on the duties of his office at this adjourned term.]

———◆———

## Thomas Wilson *versus* Thomas Clements.

*A.* and *B.* having an open account, an adjustment takes place between *A.* and an agent of *B.*, duly authorized, and the balance found due is paid over to the agent. *B.* expresses dissatisfaction at the mode of the settlement: whereupon *A.* writes to *B.*, "*Re-peruse the accounts, make out a statement according to your own wishes, and draw on me for the balance, which shall be punctually honored.*" Two years afterwards, *B.*, being pressed by a creditor, draws a bill on *A.* in favor of the creditor. It was held that *A.* was not bound to accept or pay the bill so drawn.

WILSON vs. CLEMENTS.

THIS was an action of the case brought to recover the contents of a bill of exchange drawn by *Joseph Hinkley*, in favor of the plaintiff upon the defendant, for the sum of 2405 dollars, 60 cents, dated June 1, 1801, and payable at thirty days' sight.

The declaration contained three counts—the first upon the bil as accepted; the second upon a promise to accept such bills as should be drawn; the third for money had and received.

[ * 2 ] * Upon *non assumpsit* pleaded to all the counts, the cause was tried before *Parker*, J., at November term, 1806. The plaintiff produced in evidence the bill of exchange declared on, which was presented and noted for non-acceptance, July 27th, 1801.

He also produced a letter from the defendant to *Hinkley*, dated July 31, 1799, containing, among other things, the following words:— " *Re-peruse the accounts, make out a statement according to your own wishes, and draw upon me here for the balance, which shall be punctually honored.*"

The existence of the plaintiff's demand on *Hinkley* was also proved, and that, when pressed for payment or security by the plaintiff, *Hinkley* drew the bill in question, showing the letter of the defendant at the same time, as evidence of his authority to draw.

Upon this evidence, the plaintiff's counsel contended for a verdict for the amount of the bill, with interest, on the ground that a direction to draw, or a promise to accept a bill to be drawn, was sufficient to charge the defendant upon one or the other of the two first counts.

The defence stated on the trial was, that, prior to the date of the letter before referred to, *viz.*, on the 26th of September, 1798, all accounts between the defendant and *Hinkley* were adjusted by the defendant and a brother of *Hinkley*, by him authorized thereto; that the balance so found due was paid over to the said agent, who gave a discharge therefor; that, neither at the time of writing the letter by the defendant, nor of drawing the bill by *Hinkley*, was there any thing due from the defendant to *Hinkley*, as would ap pear by the accounts between them, and by the discharge above mentioned.

The evidence offered by the defendant to support the statement, was rejected, and a verdict taken, by direction of the judge, for the plaintiff, with liberty to the defendant to move for a new trial upon the above state of the case, as reported by the judge.

At the last March term, the motion for a new trial was argued by *Dexter*, for the plaintiff, and *Gore*, for the defendant.

[ * 3 ] * [*Note.* The chief justice, having been of counsel in the cause, did not attend at the argument.]

WILSON vs. CLEMENTS.

*Gore*, in support of the motion. All the counts in the plaintiff's declaration are bottomed on a supposed promise in the defendant's letter to *Hinkley*, the drawer of the bill. But no action can be supported on that letter, whatever promise or contract it may be supposed to contain. For it is wholly without a legal consideration, and a mere *nudum pactum*. If there was any error in the adjustment alluded to, the defendant was liable to an action for the amount of such error without an express promise. A naked promise like this, made from the feelings of friendship, or upon an idle and insignificant consideration, can be no foundation for an action at law (1).

A promise, to be binding in law, must be coëxtensive with the obligation (2). The consideration for this promise could be only the sum, if any, which was really and actually due to *Hinkley* on a supposed error in the account adjusted between him and the defendant. And were this action now between those parties, *Hinkley* could recover no more than the amount of such error, and the burden would be on him to show what that sum was. It does not appear, nor is it pretended, that the defendant was legally indebted to the drawer of the bill in a cent. The promise then, as far as appears, was wholly without consideration, and void.

The promise being in writing makes no difference. The opinion of *Wilmot*, J., in the case of *Pillans & Al.* vs. *Van Mierop & Al.* (3), that a promise being in writing obviated the objection of *nudum pactum*, has been entirely exploded by the decision of the case of *Rann & Al.* vs. *Hughes* (which was adjudged first in the exchequer chamber, and afterwards in the house of lords), and shown to be founded in an erroneous conception, if not of the civil, at least of the English law, which divides contracts only into *parole*, including * under that description all not under    [ *4 ] seal, whether written or verbal, and those *under seal*.

A promise by an executor to pay a debt of the testator, if there be no assets, is *nudum pactum* (4).

What shall be a sufficient consideration to support a promise, is a subject of frequent discussion. Perhaps the best general rule is, that any damage, or any suspension or forbearance of his right, or any possibility of a loss occasioned to the plaintiff by the promise of another, is a sufficient consideration, and will make the promise binding, although no actual benefit accrue to the party undertaking (5).

(1) 1 *Com. Dig.*, folio edition, 159.—1 *Morgan's Essays*, 121.—*Forth* vs. *Staunton.*— 1 *Saund.* 210, *and Williams's Notes.*—1 *Powell on Contracts*, 355.
(2) *Rann & Al., Exrs.*, vs. *Hughes, Admr.*, 7 *Term R.* 350, *in note.*
(3) 3 *Burr.* 1670.—See also *Powell on Contracts*, 340.
(4) *Pearson* vs. *Henry*, 5 *Term Rep.* 6.
(5) 1 *Saund.* 211, cites 3 *Term R.* 24.— 2 *H. Black.* 312.

But the promise, in this case, was not made to the plaintiff, and if of any validity, being but a mere *chose* in action, was not assignable.

It was contended at the trial, that the defendant's letter to *Hinkley* amounted to an acceptance of this bill, or at least to a promise to accept it. This letter was written in July, 1799, to the drawer of the bill, two years before the existence of the bill, which was drawn in June, 1801. There never was any communication between the plaintiff, the holder of the bill, and the drawee, the present defendant, previous to the presentation for acceptance, and his refusal to accept it.

There can be no acceptance of a bill not yet drawn, not in existence. It is a contradiction in terms.

A promise to the drawer of the bill to accept, can never be construed into an acceptance of the bill in favor of the holder; and there is no instance of the mere engagement of the drawee of a bill to the drawer being adjudged an engagement to the holder of the bill.

In the case of *Johnson & Al.* vs. *Collins* (6), it is distinctly determined by all the Court, that a mere promise by a debtor to his creditor, that, if he would draw a bill upon him at a certain day for the amount of the demand, he should then have [ *5 ] * the money, and would pay it, does not amount in law to an acceptance of the bill when drawn; and an endorsee for a valuable consideration, between whom and the drawee no communication passed at the time of his taking the bill, can neither recover upon the count as for an acceptance, nor on the general counts for money had and received, &c.

This was a much stronger case than the one at bar. The letter was written by an acknowledged debtor to his creditor, authorizing him to draw for a sum certain, and at a certain day; all which was done. In one instance the case resembles that before the Court— the plaintiff there received the bill in discharge of a preëxisting debt; but in every other feature the plaintiffs had stronger claims in law and equity than are presented in the case under discussion. The drawer of the bill, after its date, and before presentation, had become bankrupt, and unless the holder obtained the money of the drawee, his debt would be lost; and the drawee admitted that he owed the money to the drawer or his assignees.

*Dexter* did not contend that the promise was more valid because it was in writing, but he considered it well settled that there were some promises, to recover on which no consideration need be shown

(6) 1 *East's Rep.* 98.

such, for instance, as that growing out of the endorsement of a bill or note. Thus the acceptor of a bill of exchange is bound, though without any consideration from the holder, or any funds of the drawer in his hands.

By the law merchant, when one does a thing which gives a credit to another, he is bound by it.

Thus one advancing money on a letter of credit, has a right of action against the writer of the letter, though it was not addressed to him, nor to any one else by name.

If, then, the letter in this case amounts not to an acceptance, but only to a promise to accept, if by it the plaintiff was induced to give a credit to *Hinkley,* no other consideration need be shown. But here was in fact a good consideration in equity and good conscience. It appears that the defendant had been possessed of property of *Hinkley,* for which he was bound to account. He had rendered an account, which not proving satisfactory to *Hinkley,* the defendant * waived the settlement supposed 　[ * 6 ] to have been made. There was then an open account between those parties, which sufficiently shows a past consideration.

But this is not merely a promise to accept; it is, by the law merchant, an actual acceptance (7). Lord *Mansfield,* in delivering his opinion, in the case of *Pierson* vs. *Dunlop* (8), says, " It has been truly said as a *general rule,* that the mere answer of a merchant to the drawer of a bill, saying, ' he will duly honor it,' is no acceptance, unless accompanied with circumstances which may induce a third person to take the bill by endorsement; but if there are any such circumstances, it may amount to an acceptance, though the answer be contained in a letter to the drawer."

The general principles established in the case of *Pillans* and *Rose* vs. *Van Mierop* and *Hopkins,* have never been contested. In that case, a promise to accept a bill not then *in esse* was considered as an acceptance. Notwithstanding *White's* failure, the plaintiffs claimed the defendant's promise, and the Court unanimously supported the claim. *Nudum pactum* is no doctrine of the law merchant. " I will give the bill due honor," is in effect accepting it (9).

A letter from the drawees of a bill to the drawer, stating that, " their prospect of security being so much improved, they shall accept or certainly pay the bill," is an acceptance in law, although the drawees had before refused to accept the bill, when presented for acceptance, and again after writing such letter refused payment of it, when presented for payment ; and although such letter written before, were not received by the drawer until after the bill became

(7) *Chitty on Bills,* 77.—*Kyd,* 73.　　　(8) *Cowp.* 571.
(9) By *Lord Mansfield,* 3 *Burr.* 1669

due (10). In the case alluded to, the Court did not think it needful to show that the bill was taken in consequence of the promise of the drawee to accept. But in the case at bar, it appears that such a promise was the sole ground on which the bill was received.

[ * 7 ]     * The authorities all concur that a promise, attended with such circumstances as induce a third person to give a credit, is binding, and amounts to an acceptance. Indeed, the case just cited goes further; for there a promise made long after the bill was drawn and negotiated, was held binding.

The case of *Johnson & Al.* vs. *Collins* appears to have arisen upon a mere verbal declaration by the drawee to the drawer, " Draw the bill, and I will accept it." It was not in writing, of which a use might be made in gaining credit to the bill; but merely a conversation between the drawer and drawee, of which it does not appear that the payee knew any thing at all.

The length of time, which passed between the writing of the letter and the drawing of the bill, was a circumstance which the plaintiff was undoubtedly bound to take notice of. It was his concern to see that no circumstances had intervened which annulled the binding force of the letter. If *Hinkley* had been fraudulently inclined, and had before drawn on the defendant for the amount due him, the plaintiff must have failed. If *Hinkley's* pecuniary situation had altered during that time for the worse, that circumstance might have operated also against the plaintiff. But there was no pretence at the trial that any such circumstance had arisen.

*Gore,* in reply. The case of *Pillans & Al.* vs. *Van Mierop & Al.* differs from the present case, inasmuch as it was a promise made to the plaintiffs to accept and pay a bill which they, the plaintiffs, should draw for a certain amount; and this after a communication between all the parties. Whereas the present action is founded on a promise to the drawer of the bill, without any communication between the drawee and the holder, and for an amount unascertained.

The case of *Powell & Al.* vs. *Monnier* was in chancery, and differed essentially from the case under consideration. The letter of *Monnier,* saying he would honor the bill, was after the bill was drawn, and referred to the specific bill in trial; whereas, in the present case, the letter was written two years before the bill was drawn and it referred to no specific sum. There were many

[ * 8 ]     other circumstances in that * case in favor of the holder and which probably had effect in the decision.

(10) *Wynne & Al.* vs. *Raikes & Al.* 5 *East. Rep.* 514.—Cites *Powell & A* vs *Monnier,* 1 *Atk.* 611.

The case of *Pierson* vs. *Dunlop & Al.* was cited to prove that the mere answer of a merchant to the drawer of a bill, saying, he will duly honor it, is an acceptance if accompanied with circumstances which may induce a third person to take the bill by endorsement.

Taking the position of Lord *Mansfield* as broad as possible, it does not come up to the present case. It supposes a letter written to the drawer of the bill, after the bill was drawn, and referring to it specifically.

Even in the case put, of an existing bill, it is not said what circumstances may render such an answer an acceptance. And Lord *Mansfield* seems to imply, by not saying that such circumstances existed in the case then decided, that the circumstances of that case did not warrant such a construction of the letter. And those were much stronger than any in this case. There the defendants had a navy certificate for a great part, if not the whole of the money, which they received and held from the plaintiff for the express purpose of paying the bill. Further, the plaintiff there actually gave up the lien which he had on the goods carried on freight. Yet the counsel who argued the cause for the plaintiff did not pretend that the letter was an acceptance, nor did the court decide the cause on that ground. Lord *Mansfield* observes, there is great reason to say that what the defendant *did* was equivalent to an acceptance. The defendant received the certificate from the plaintiffs, and said the bill would not be accepted before the certificate was paid, and on the next day refused to deliver up the certificate. Under all these circumstances, the letter was not deemed an acceptance; but the court determined that what was said to the holder, when the bill was presented, was a conditional acceptance; Lord *Mansfield* expressly says this was a letter of credit; to make it an acceptance, it should have been sent to the holder of the bill; and one of the special jury declares that it is a universal rule among merchants, that an engagement to the drawer of the bill is not an engagement to the holder of it.

*And now, at this term, the opinion of the Court was [ * 9 ] delivered as follows, by

Sedgwick, J. If this case is to be considered merely upon common law principles, it is manifest, for two reasons, that the plaintiff is not entitled to recover. 1st. For the want of a sufficient consideration; the promise expressed in the defendant's letter being an undertaking to pay any balance which should be *claimed* by *Hinkley*, upon a re-perusal of the accounts, whether in fact any thing was justly due or not; and it does not appear that any thing was due; and unless there was, the promise must be considered as *nudum*

*nactum.* 2d. Considered as a promise from the defendant to *Hink-ley*, had it been legally obligatory, being a *chose* in action by the common law, it could not have been so assigned to the plaintiff as to authorize him to bring an action in his own name. But I apprehend, it is not so to be considered ; but that the authority given by the defendant to *Hinkley* to draw upon him, and he having drawn in pursuance of that authority, the bill of exchange in question, the bill and letter are so coupled together, that the case must be determined on the principles of commercial law, of which the Court will take notice. This presents two questions for consideration:—

1. Supposing the bill to have been drawn in due season, and taken by the plaintiff, with a knowledge of the defendant's authority to *Hinkley* to draw upon him, and *in reliance* upon it, is the plaintiff entitled to recover in this action ?

2. If the plaintiff could support his action, provided the bill had been seasonably drawn, does the distance of time between the date of the letter and the date of the bill, with the other circumstances in the case, in law vary it ?

As to the first question ; in the case of *Johnson & Al.* vs. *Collins,* Lord *Kenyon* says, " This was a promise to accept a non-existing bill, which varies this case from all those which have been decided upon the same subject; and I know not by what law I can say that such a promise is binding as an acceptance." And it is added by *Grose,* J., that " no authority had been cited to show that, by the law merchant, a *mere* promise to accept a bill to be drawn in [ *10 ] *future, amounts to actual acceptance, when drawn. Then we have no authority to extend the rules which have been hitherto established." These general declarations of the judges must be taken in relation to the subject matter. In *that* case, the promise was merely *verbal,* was not known to the plaintiffs, nor had there been any communication between the plaintiffs and defendant on the subject; and of course the bill was not taken upon the credit, or in reliance upon the promise of the defendant to accept it.

Lord *Kenyon* and Justice *Grose* cannot reasonably be understood as intending to affirm, to the extent to which the words seem to import, that in no case a *previous* promise to accept had been adjudged to be binding on the drawee ; for in the argument, cases directly contrary had been cited, and particularly that of *Pillans & Al.* vs. *Van Mierop & Al.,* where the promise of the defendant not only preceded the drawing of the bill, but notice not to draw had been previously given. It was therefore intended to affirm, that such a promise as had been proved in that case—a mere verbal promise—had never been decided to be an acceptance of a non

existing bill. And in the case of *Johnson & Al.* vs. *Collins*, *Le Blanc*, J., truly expressed and limited the doctrine upon this subject. He said, " It has been truly said, *as a general rule*, that the mere answer of a merchant to the drawer of a bill, saying *he will duly honor it*, is no. acceptance, unless accompanied with circumstances which may induce a third person to take the bill by endorsement; but if there are any such circumstances, it may amount to an acceptance, though the answer be contained in a letter to the drawer " (11). These words are a quotation from what is said by Lord *Mansfield* in the case of *Pierson* vs. *Dunlop* (12). And in the case of *Mason* vs. *Hunt & Al.*, Lord *Mansfield* says, " If one man, to give credit to another, makes an absolute promise to accept his bill, the drawer or any other person may show such a promise upon the exchange, to get credit, and a third person, who should advance his money upon it, would * have nothing 　[ * 11 ] to do with the equitable circumstances, which might subsist between the drawer and acceptor."

After these authorities, it would be too much to say that such a promise, inducing such consequences, should not be binding ; and more especially as very respectable writers on the subject of bills of exchange, whose works have become popular, and by whose authority merchants regulate their conduct, have fully adopted the principle. *Kyd* has quoted the very words recited from the report of the case of *Mason* vs. *Hunt & Al.*, as undoubted law (13). And *Chitty* has expressly adopted the same opinion (14). Indeed, nothing appears more consonant to reason and natural justice than that a man should be obliged to fulfil a promise which he had deliberately made, and which had induced another, from the confidence he reposed in it, to part with his property.

But it is not intended to decide, in this case, whether the facts will bring it, in contemplation of law, within the principles which govern the cases of *Pillans & Al.* vs. *Van Mierop & Al.*, and *Mason* vs. *Hunt & Al.*, and that class of cases which have determined that a promise to accept a bill not drawn, shall be obligatory, under certain circumstances, upon the person making the promise ; because we are all satisfied as to the second question, that if the plaintiff could support his action, provided the bill had been seasonably drawn, and with reliance by the plaintiff upon the credit of it, that the distance of the time between the date of the letter and the date of the bill, with the other circumstances n the case, entitle the defendant to avail himself, if the facts

(11) 1 *East. R.* 105.　　　　(12) *Cowp.* 573.
(13) *Kyd on Exchange*, 74.　　　(14) *Chitty on Bills*, 77

will support him in it, of the defence which he offered to set up on the trial.

On this question there is no adjudged case expressly in point; but considerable aid in deciding it may be derived from the principle, which has been frequently ruled at *nisi prius* in England (15); that wherever it appears that a note has been endorsed over, some time after it is due, which is out of the usual course of trade, that circumstance alone * throws such a suspicion on it, that the endorsee must take it on the credit of the endorser, and must stand in the situation of the person to whom it was payable. And this principle is fully established by the cases of *Brown* vs. *Davis* (16), and *Boehm* vs. *Sterling* (17). The reason is obvious. The time of the negotiation is, in itself, a sufficient caution to the person who takes the assignment, so that he cannot reasonably claim an indemnification in consequence of having suffered from imposition.

[ * 12 ]

The case under consideration is at least entitled to as favorable regard on that account. The terms of the letter from the defendant to *Hinkley* were sufficient to excite caution in the plaintiff. It was apparent that the accounts, which were the foundation of *Hinkley's* demand, had been adjusted, and the defendant discharged therefrom ; that the authority to draw was a trust of the most confidential nature ; that it could not, of course, be supposed to be extended, for an indefinite length of time; that it must have been intended, if at all, to be exercised freely, and not under circumstances of pressure and embarrassment ; that more than two years had intervened since that authority was given ; and the plaintiff could not have been certain that a present relief was not, at least, as influential with *Hinkley* to draw the bill, as a belief that the amount was justly due. It is probable, too, that *Hinkley's* circumstances had, in the mean time, between the date of the defendant's letter and the date of the bill, suffered considerable deterioration. At the latter period, the arrest by the plaintiff is evidence that *Hinkley's* credit was then, in his opinion, unsound ; and it is highly improbable that the defendant would have made the promise at all, had he foreseen the use which was, and under these circumstances most probably would be, attempted to be made of it. It would, in my opinion, be unreasonable to hold the defendant at all responsible for any bill, which *Hinkley* might be induced, within two years, to draw upon him, to obtain a * release from imprisonment.

[ * 13 ]

And, indeed, the length of time alone is a sufficient reason

(15) *Kyd*, 283.  (16) 3 *Term R.* 80.
(17) 7 *Term R.* 423. See also *Chitty*, 113.

why the defendant's promise should not be considered as conclu sively binding upon him.

We are all, therefore, of opinion that there should be

A new trial granted (18).

(18) [The very term *acceptance* imports an existing bill; and the better opinion is, that a promise to accept a non-existing bill cannot be available as an acceptance in the hands of the drawer.—*Johnson* vs. *Collins*, 1 *East.* 105.—*Milne* vs. *Prest*, 4 *Camp.* 393.—1 *Holt, C. N. P.* 181.—*Smith* vs. *Brown*, 2 *Marshall*, 41.—Sed vide *Cooledge* vs. *Payson*, 2 *Wheat.* 66.—And, upon the established principles of law, it would seem that such a promise can only be binding between the parties, and cannot be available as an acceptance, even to a third person (2 *Pardessus, No.* 362, 363); although *Bailey, Chitty,* and *Thomson,* and other writers on bills, express a doubt upon the matter.—ED.]