Gibbs *v.* Nash.

---

SAME TERM.    *Before the same Justices.*

GIBBS *vs.* NASH.

Where a plaintiff, in his declaration, sets up an agreement which, by the statute of frauds, would be invalid unless it was in writing and subscribed according to the provisions of the statute, the legal presumption is that it was in writing; unless the contrary is stated in the declaration. And if the agreement, as stated in the declaration, is put in issue by the plea of the defendant, the plaintiff must produce, at the trial, legal evidence of the existence of such an agreement; which can only be done by proving a written agreement duly executed according to the provisions of the statute.

Gibbs *v.* Nash.

ERROR from the Delaware common pleas.   Gibbs sued Nash before a justice, and declared specially that the defendant, for the consideration of one dollar and twenty-five cents to be paid per head, agreed to deliver him his flock of sheep, supposed to consist of 72, excepting 10 or 12 which the defendant reserved, within the week then current.   That a certain account then existing and due from the defendant to the plaintiff was to apply in part payment, and a note was to be given for the balance, payable on the 1st of Feb. 1848.   The plaintiff averred that he cancelled the account in pursuance of the agreement, demanded the sheep, and tendered the note for the balance.   The declaration also contained appropriate counts for work, labor and materials, goods sold, &c.   The defendant pleaded specially a tender of $6,86 as the amount of the account, and 86 cents costs, and the general issue and notice of set-off as to the residue of the declaration.   The plaintiff replied that his demand exceeded $6,86, besides costs, and the defendant took issue thereon.   Carrington, a witness for the plaintiff, testified as to the contract for the sheep.   The parties had a conversation the night preceding the final agreement, substantially, however, embracing the terms of it as consummated.   The plaintiff and Carrington went to the defendant's; the latter remained in the wagon, and the parties were at the fence.   Nash said he would like to keep ten or a dozen.   Gibbs said he would make no objection.   Gibbs said he would buy them if Nash would wait until February.   The price was spoken of the night before. Nash asked ten shillings per head.   Nash said he would have to make out some money the 1st of December, and he would like to have Gibbs make it out then, if he could.   Nash asked Gibbs, if he got cramped for money if he would not let him have it the 1st of December.   Gibbs said he would let him have his name, &c.   Nash then said, " I am owing you something in the store ; turn that in."   Gibbs said it was no object for him to buy the sheep for that.   Then the defendant turned to the witness and said, he, the witness, had a little account, and told him to turn that.   That was all that was said about the accounts. Nothing further was said as to what any of the accounts

amounted to. The account of the witness had never been
posted up. It was not agreed whether they should pick out 10
or 12 sheep. The witness was a blacksmith in the employ of
the plaintiff, and the account referred to as his, properly be-
longed to the plaintiff. At the time of demanding the sheep
the plaintiff tendered the accounts receipted; the one being a
store account amounting to $3, 83, and the other for work at
the shop $3,01, amounting together to $6,84, the sum tender-
ed. On the trial the plaintiff showed that two items of six-
pence each had been overlooked in posting.

*J. A. Givens,* for the plaintiff.

*Monson & Gleason,* for the defendant.

*By the Court,* MOREHOUSE, J.   The principal question is
whether the contract for the sheep was within the statute of
frauds. (2 *R. S.* 136, § 3.)   That section declares that "every
contract for the sale of any goods, chattels or things in action,
for the price of 50 dollars or more, shall be void, unless 1. A
note or memorandum of such contract be made in writing, and
be subscribed by the parties to be charged thereby; or 2. Un-
less the buyer shall accept and receive part of such goods, or
the evidences, or some of them, of such things in action; or,
3. Unless the buyer shall, at the time, pay some part of the pur-
chase money."

It is contended that we are to assume that a note or memo-
randum of the contract was made in writing and subscribed by
the defendant, because it was not affirmatively proved that it
was not done. I do not understand the rule thus. The true
rule is laid down with great distinctness in *Coles* v. *Bowne,*
(10 *Paige,* 526.) "where the complainant, in his bill, sets up
an agreement which, by the statute of frauds, would be invalid
unless it was in writing, and subscribed according to the pro-
visions of the statute, the legal presumption is that it was in
writing, unless the contrary is stated in the bill. And if the
agreement, as stated in the bill, is denied by the answer of the

defendant, the complainant must produce legal evidence of the existence of such an agreement, upon the hearing ; which can only be done by producing a written agreement duly executed according to the provisions of the statute." This is precisely the rule of pleading on this subject in courts of law. The importance of preserving consistency in legal principles, and especially where their assimilation is perfect in law and equity, is inculcated in every provision establishing the present judiciary, and regulating proceedings before it. The plaintiff in this case states the agreement generally. That was all he was bound to do. The court would presume it was a legal contract. If the defendant had not denied it by a plea of the general issue, no proof of the contract would have been required ; and the presumption that it was a legal contract would still attach. As the defendant did so deny it, it was incumbent on the plaintiff to produce legal evidence of the contract. The evidence furnishes no ground for presuming that it was in writing.

Did the buyer *at the time* pay some part of the purchase money ? Nothing but words passed between the parties at the time. The amount of the accounts was to be ascertained and liquidated. The purchase was of a flock of sheep supposed to be 72, and 10 or 12 were reserved by the defendant. The proposition to deduct the accounts from the aggregate value of the sheep when ascertained, came from the defendant, and obviously in their connection with what passed on the subject of payment for the sheep, to encourage the plaintiff to agree to pay on the 1st of December. The plaintiff said it was no object for him to buy the sheep for the account. At most, it was an agreement that upon the delivery of the sheep the defendant would take the plaintiff's note for their value at ten shillings per head, less the accounts spoken of, to be ascertained and deducted. Every thing rested in parol. If the plaintiff's accounts were cancelled before he tendered them, receipted, it was not *at the time* of the contract ; for, as respected one at least, it had not been posted. (*Artcher* v. *Zeh*, 5 *Hill*, 200, 205.)

The court of common pleas may reverse or affirm a judgment of a justice in whole or in part ; and it is suggested that they

should have affirmed this, to the extent of 12½ cents damages and costs. The plaintiff rendered his accounts, and the tender was made upon the faith of their correctness. The money tendered was in court, and the amount known to the party. If he had ingenuously called the defendant's attention to the deficiency, and the occasion of it, the amount would in all probability have been added to the tender. The 12½ cents was in no sense the matter in controversy, and I think the court exercised their discretion justly and discreetly in reversing the judgment in whole.

Judgment of the common pleas affirmed.

