# SUPREME JUDICIAL COURT,

FOR THE

## WESTERN DISTRICT.

## 1860.

---

## COUNTY OF CUMBERLAND.

---

HUGH M. PLUMMER & *als.* *versus* S. R. LYMAN & *als.*

A parol promise to accept an order from a debtor in favor of his creditor, between whom and the maker of the promise there has been no privity, is within the statute of frauds as a promise to pay the debt of another.

Although a written promise to accept a non-existing bill operates as an acceptance, if the bill is drawn within a reasonable time, a verbal promise to accept such a bill is not valid.

Where A has a lien on a vessel for materials used in building it, and B holds the vessel to secure him for advances made to the builder, a promise made by B to accept the order of the builder in favor of A, for the amount of his claim, cannot be enforced, unless it appears to have been made for some consideration, such as a discharge of A's lien on the vessel, or his promise to discharge it, or to release his claim on the builder.

The fact that the acceptance of the order would, by operation of law, discharge the lien, would not be a consideration for a previous verbal promise to accept it.

ON REPORT, by DAVIS, J.

ASSUMPSIT on the following order : —

. " $224.                         "Cumberland, Dec. 17th, 1857.

"Messrs. Lyman, Marrett & Co., — Six months after date, please pay to Plummer & Gerry two hundred and twenty-four dollars, and charge the same to my account.

                              "David Spear."

This order was duly protested for non-payment.

In the summer of 1857, Spear was building a vessel at Cumberland; the plaintiffs furnished lumber which was put into said vessel, and to pay for which the above order was given. On Wednesday, Dec. 16th, the vessel was launched at about noon, and was brought up to Portland the following Saturday evening, between 9 and 10 o'clock.

Jesse Plummer, one of the plaintiffs, testified that he first heard of the vessel being launched on Thursday of the same week; had a conversation with Marrett, one of the defendants, and learned that the defendants had an interest in the vessel, and asked Marrett if he would pay the plaintiffs' claim. Marrett said he would not without Spear's order, but did not wish the plaintiffs to attach the vessel on their lien, as it would put the defendants to trouble. Marrett said if Spear would give an order on the defendants, they would accept it. Witness went to Cumberland the next day, (Friday,) and obtained the order from Spear which is given above, and presented it to Mr. Lyman and to Mr. Marrett, but they both refused to accept it. He then went to see Spear, but Spear would do nothing further. He could not see Spear until Saturday. After seeing him, he went to Cumberland to attach the vessel on the lien, but she had gone to Portland.

John E. Donnell testified that he heard part of the conversation between Jesse Plummer and Marrett, and understood Marrett to say that, if the plaintiffs would get an order from Spear, the defendants would accept it.

Orlando M. Marrett, one of the defendants, testified that the defendants had no title to the vessel until the day she was launched, when they took a carpenter's certificate, and filed it at the custom house. The defendants had advanced in cash and merchandize to Spear, from $10,000 to $12,000, and had no funds of Spear in their hands at the time of witness' conversation with Plummer. If Plummer had attached the vessel to enforce his lien, the defendants would have had to pay his claim. Witness could not recollect all his conversation with Plummer, but is confident he never

agreed to accept an order from Spear. The defendants sold the vessel, and received the proceeds, which were not sufficient to remunerate them for their advances and expenses.

The evidence was reported to the full Court, they to draw such inferences as a jury might draw, and enter a nonsuit or default, as law and the rights of the parties should require.

*Howard & Strout,* for the plaintiffs.

The property in the vessel was in the defendants, after the launching, when they had filed the carpenter's certificate in the custom house. It appears by the testimony of Plummer and Donnell that, rather than have the plaintiffs enforce their lien, Marrett promised to accept an order from Spear. Marrett denies this, but the acts of the parties show that he is in error; for Plummer went to Spear and obtained an order, and gave Spear *a receipt in full,* and then presented the order to Marrett.

The case shows a promise, upon a sufficient consideration, to accept an order. It was an original promise, and not within the statute of frauds, *Townsley* v. *Sumrall,* 2 Peters, 170; and is binding upon the parties. *Coolidge* v. *Payson,* 2 Wheat., 75; Chitty on Bills, 285, and note.

It makes no difference that the order is not negotiable. The promise was to accept an order, and, not being within the statute of frauds, it constituted a legal obligation, whether the order was negotiable or not.

*Shepley & Dana,* for the defendants.

The advances of the defendants having greatly exceeded the value of the vessel, the equity of the case is with them.

Admitting the alleged promise, it was a parol agreement to accept a non-existing order, or draft, upon which the defendants cannot be liable. Chitty on Bills, 284; Bayley on Bills, 145; *Laing* v. *Barclay,* 1 B. & C., 398; *Coolidge* v. *Payson,* 2 Wheaton, 66; *Storer* v. *Logan,* 9 Mass., 58; *Wilson* v. *Clements,* 3 Mass., 1.

A promise to accept, is not an acceptance. *Johnson* v. *Collins*, 1 East, 105; 3 Mass., 13.

Before the alleged promise, there was no privity between the plaintiffs and defendants. The plaintiffs had dealt directly with Spear, and the defendants were not liable for his debts. Spear owed the plaintiffs, and the plaintiffs say that defendants promised to pay the debt. The promise, if proved, was to pay the debt of another, and was within the statute of frauds.

The conduct of the plaintiffs shows that they did not regard the alleged promise as an absolute and independent one, but as collateral to the indebtedness of Spear. After the defendants declined accepting the order, the plaintiffs attempted to enforce the lien on the vessel, in a suit against Spear. A parol promise, collateral to a subsisting indebtedness, cannot be enforced.

The plaintiffs were not injured by the defendants not accepting the order, as they had until Monday noon to enforce their lien on the vessel. With ordinary diligence, the plaintiffs might have made themselves secure. That they did not, was occasioned by their own negligence and not by any act of the defendants.

The opinion of the Court was drawn up by

TENNEY, C. J.—The action is upon an alleged verbal promise, made by the defendants, that they would accept an order to be drawn on them by David Spear, in favor of the plaintiffs; and the cause of action alleged, is a failure to comply with the promise.

It was admitted that, in the summer of 1857, David Spear was building a vessel at Cumberland, and all the lumber for which the order was given by him was furnished by the plaintiffs, and put by him into the vessel, which was launched on Wednesday, Dec. 16, 1857, about noon, and was brought up to Portland the following Saturday evening, about eight or nine o'clock. No question is made that the plaintiffs had a lien on the vessel under the statute.

It appears from the testimony of Jesse Plummer, one of the plaintiffs, which is the most favorable evidence for them, that the defendants, having made to Spear large advances to aid him in building the vessel, which were equal, or nearly equal to the full value of the same, and they having, as they claimed, the legal title of the vessel for the security of the payment of such advances, were unwilling that the plaintiffs should enforce their lien against the vessel. One of the defendants being solicited on the part of the plaintiffs, to pay the amount of the claim of the latter against Spear, said, if they would obtain his order, as evidence of his approbation that the payment should be made, they would accept it. Soon after, the witness obtained the order of Spear on the defendants, not negotiable, payable in six months, for the balance of their claim, payment of the sum of two hundred dollars having been made by Spear at the time he gave the order, and the plaintiffs gave a receipt for the account. This order having been shown to the defendants by the witness, and they being requested to accept it, refused to do so. This was after the vessel was launched, but more than two full days before the lien would expire.

It is regarded as well settled by our law, that a written promise to accept a non-existing bill operates as an acceptance, provided the bill be drawn within a reasonable time; but a verbal promise to accept a non-existing bill has not been treated as valid. *Coolidge* v. *Payson*, 2 Wheat., 66; *Weston* v. *Clements*, 3 Mass., 1; Chitty on Bills, 312, note (g).

It is insisted for the defendants, that the promise in the case before us, if made as alleged, is within the statute of frauds, it being at most a verbal agreement to accept an order to pay a debt of another.

The testimony does not disclose a case of a promise on the part of the defendants to accept an order of Spear on them, as the consideration of a discharge of the plaintiffs' lien on the vessel; or a promise to discharge it; or for giving to Spear a receipt by the plaintiffs of their claim; or

that they signified a readiness to make the discharge of the lien, at the time they presented the order to the defendants for acceptance ; and a demand on them to accept it ; or that they informed them that they had given to Spear a receipt of their claim. But the cause relied upon in support of the action is a naked promise, that the order of Spear would be accepted.

The acceptance by the defendants of such an order of Spear on them as would discharge the account against him, would, by operation of law, discharge the lien ; but this would not be the consideration of the previous verbal promise of the defendants to accept an order, not then drawn, and which might never be drawn, to pay the debt of Spear, when such discharge of the account was not a condition to the acceptance of the order.

The case differs from that of *Townsley* v. *Sumrall*, 2 Pet., 170, relied upon by the plaintiffs, which was a promise to accept bills and not performed, goods having been previously received by the defendant to the amount of the bills promised to be accepted when they should be drawn. This was held to be a promise, not to pay the debt of another, but the debt of the defendant himself, — damage to the promisee furnishing as good a consideration as a benefit to the promisor.

It is not easy to perceive that the refusal to accept the order by the defendants was injurious to the plaintiffs. The receipt to Spear was valid only so far as the plaintiffs received actual payment. The order, not being accepted and not negotiable, was no discharge of that part of the account to which it was intended to apply, as between the plaintiffs and Spear. The receipt could be explained, and the plaintiffs could not be injuriously affected thereby. The defendants refused to accept the order as they had promised. They had no knowledge of the receipt when they refused to accept the order. They were not misled by the receipt, and had no reason to suppose that the lien was discharged ; and they certainly could not claim an advantage from the receipt,

as being a discharge of the lien, more than could Spear, as being the discharge of the balance of his debt. The plaintiffs did not treat the receipt as a discharge of the debt, or of the lien on the vessel, inasmuch as, after the defendants' refusal to accept the order, they took out a process in order to enforce the lien by attachment, and were prevented from doing it by their own delay.

The promise of the defendants, relied upon, appertained to the debt of another, and not to their own, and is not a foundation in law for the action.　　*Plaintiff nonsuit.*

APPLETON, CUTTING, GOODENOW, DAVIS and KENT, JJ., concurred.