## L. D. WAKEFIELD v. M. GREENHOOD.

COMPLAINT ON PROMISE TO PAY DEBT OF ANOTHER.—In an action brought upon a promise of the defendant to answer for the debt or default of another, it is not necessary in the complaint to aver that the promise was in writing.

COMPLAINT ON PROMISE TO ACCEPT A DRAFT.—In an action brought upon a promise made by the defendant to accept a draft which another might draw on him, it is not necessary to aver in the complaint that the promise was in writing.

PROMISE TO PAY DRAFT WHEN DRAWN.—A promise that a drawee will pay a draft which may be drawn on him, is a promise to accept the draft when drawn, and if the drawee refuse to pay the draft when drawn, he may be sued as acceptor.

A PROMISE TO PAY A DRAFT MUST BE IN WRITING.—A promise to pay a draft that may be drawn on the promisor by another person for a debt due by the drawer to the person to whom the promise was made, is void, unless in writing, and signed by the person making the promise.

APPEAL from the District Court, Sixth Judicial District, Sacramento County:

Plaintiff recovered judgment, and defendant appealed.
The other facts are stated in the opinion of the Court.

*Moore & Alexander*, for Appellant, contended that the demurrer should have been sustained for the reason that the complaint did not aver that Greenhood's promise was in writing, because our statute relating to bills of exchange provides that "no person within this State shall be charged as an acceptor on a bill of exchange, *unless his acceptance shall be in writing*, signed by himself or his lawful agent," and that "an unconditional promise *in writing*, to accept a bill before it is drawn, shall be deemed an acceptance," etc., and cited Wood's Digest, p. 72, Secs. 6 and 8. They also insisted that the demurrer should have been sustained for the further reason that the complaint averred that the indebtedness for which the draft was drawn was the debt of Bar. They also contended that the judgment was erroneous, because no promise in writing signed by defendant was proved.

*Henry H. Hartley*, for Respondent, argued that the promise of the defendant was not within the Statute of Frauds, and that the defendant's promise to pay was not on a contingency, but was a direct promise to pay for the transportation of the goods, and that Bar acted as the mere agent of the defendant in adjusting the account, and that defendant's liability was not on the order, but for failing to pay the amount agreed on, and cited *Wainwright* v. *Starr.* 15 Ver. 215 ; *Darkham* v. *Marrow*, 2 Comstock, 533 ; *De Wolf* v. *Ratand*, 1 Pet. 476, and *Townsley* v. *Sumral*, 2 Pet. 170.

By the Court, RHODES, J.

The contract upon which this action was brought, as stated in the complaint, is substantially that the defendant, a forwarding and commission merchant at Sacramento, engaged

the plaintiff, a teamster, to transport certain goods of one A. Bar, from Sacramento to Austin, in the then Territory of Nevada, and deliver the same to said Bar, and in consideration of the plaintiff's delivering said goods as aforesaid, the defendant promised to pay the plaintiff, upon presentation, any order or draft that said Bar might draw on the defendant, for the transportation of the goods.

The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action ; and for cause he specifies in argument, among other things, that it does not state that the defendant promised in writing to accept the bill or order mentioned in the complaint ; and that it does not state that the agreement of the defendant or some note or memorandum thereof to answer for the default of said Bar, was in writing subscribed by the defendant.

*Complaint need not aver contract to pay debt of another to be in writing.*

If the action is to be regarded as brought upon the promise of the defendant to answer for the default of Bar, the demurrer was properly overruled.  At common law it was unusual and unnecessary to allege that the contract, for the breach of which the action was brought, was entered into in writing. After the passage of the Statute of Frauds, the rule was, as stated in 1 Chit. Plea. 270, " Where the contract must have been in writing under the Statute of Frauds, yet it is not necessary in the declaration to show that fact, though it is said to be otherwise in a plea."  The authorities in support of this doctrine are very numerous, among which may be cited : *Miller* v. *Drake*, 1 Caine, 45 ; *Nelson* v. *Dubois*, 13 John. 177 ; *Elting* v. *Vanderlyn*, 4 John. 237 ; *Gibbs* v. *Nash*, 4 Barb. 449 ; *Martin* v. *McFadin*, 4 Litt. 240 ; *McDowel* v. *Delap*, 2 A. K. Marsh. 33.   The rule in equity was the same as at law.  (See *Spurrie* v. *Fitzgerald*, 6 Ves. 548 ; *Cozine* v. *Graham*, 2 Paige, 177 ; *Cowles* v. *Bowne*, 10 Paige, 526 ; *Champlin* v. *Parrish*, 11 Paige, 405.)   If the contract

stated in the declaration or bill in equity was denied, it was incumbent on the plaintiff or complainant to prove by legal evidence its existence, and this could be done only by the production, or proof of the execution and contents, of the written agreement, or some note or memorandum thereof, executed according to the provisions of the Statute of Frauds.

The language of section twelve of the Statute of Frauds of this State, (Wood's Dig. 106,) respecting a special promise to answer for the debt, default or miscarriage of another, differs somewhat from that found in the statute of the 29th Car. 2d, Cap. 3, but it is identical with that of New York, which is considered to have the same meaning as the English statute, and in that State, as we have seen, the form of pleading is held not to have been changed by the statute. No authority is cited by the defendant in support of the proposition assumed by him, that it is requisite to allege an agreement in writing ; nor is any reason suggested, or provision of the Practice Act mentioned, requiring the contract to be stated in any manner differing from that which was regarded as sufficient at common law.

*Acceptance of bill of exchange.*

The demurrer was also properly overruled, regarding the action as brought upon the promise of the defendant to pay the order or bill of exchange that might be drawn upon him by Bar. What has already been said upon the form of pleading is equally applicable to the case considered on the theory last suggested. In an action by the payee or indorsee of a bill against the acceptor, it was not necessary to aver that he accepted the bill *in writing.* (2 Chit. Plea. 149.) The promise by the drawee to pay the bill is, by necessary intendment, a promise to accept, just as the payment by him implies and includes, at the same time, the acceptance of the bill. In *Wynne* v. *Raikes,* 5 East. 514, which was an action brought against the drawees to charge them as acceptors of the bill, the acceptance was found in their letter, in which they said : "We shall accept or certainly pay, all the bills," etc. Lord

Ellenborough said that a promise to pay is an acceptance. And so, in this case, the promise to pay, if so made as to bind the defendant, is to be deemed a promise to accept the bill. In an action on the bill against the drawee who has promised to accept, he is sued as the acceptor, and the allegation in the complaint is, that the defendant accepted the bill. Such was the nature of the action and the form of the pleadings in *Coolidge* v. *Payson*, 2 Wheat. 66, which has been regarded in the United States as a leading case in respect to the liability of the drawee upon his promise to accept. (See also *Greele* v. *Parker*, 5 Wend. 414; *Parker* v. *Greele*, 2 Wend, 545; *Wilson* v. *Clements*, 3 Mass. 1.) In *Clark* v. *Cook*, 4 East., Lord Ellenborough, in delivering the opinion of the Court, said: "And it has been laid down in so many cases that a promise that a bill when due shall meet due honor amounts to an acceptance, and that without sending it for a formal acceptance in writing, that it would be wasting words to refer to the books on this subject." The eighth section of the statute of 1850 of this State, relative to bills of exchange and promissory notes, provides that "an unconditional promise in writing to accept a bill before it is drawn shall be deemed an actual acceptance in favor of any person who, upon the faith thereof, shall have received the bill for a valuable consideration." It thus appears that the drawee, under such circumstances, is liable to the payee or indorsee, and should be sued as the acceptor of the bill; and no reason is suggested why the allegation as to the acceptance should differ from that which is held to be sufficient in a case where the acceptance is indorsed on the bill.

The defendant states in his motion several grounds upon which he relies for a new trial, which are that the Court erred in holding and deciding certain matters of fact and conclusions of law; but as the record presents no evidence, except what may be inferentially gathered from the judgment, that such decisions were made, no notice can be taken of them.

The last ground is: "Ninth—Said judgment is contrary to

the evidence and is not sustained by the evidence in this: The testimony showed that the plaintiff relied upon and looked to Bar to pay his debt, and had a settlement with and received part payment from Bar, and accepted Bar's check or obligation for the balance. The judgment is not sustained by the evidence for the further reason that it was not shown that the defendant ever promised in writing to pay this claim, and that any promise made by him was a verbal one to pay the debt of another, and no consideration was shown for such promise."

For the proper solution of the question involved in this ground it will be necessary to determine the character of the agreement, upon which the action is brought, and to ascertain from the complaint whether the defendant's promise was an original and direct promise on his part, to pay for the transportation of the goods, or whether it was only collateral to some liability thereafter to be incurred by Bar to the plaintiff. After the statement of the contract, already mentioned, it is averred in the complaint that the defendant delivered the goods to the plaintiff; that the plaintiff transported them to Austin and delivered them to Bar; that thereupon the plaintiff and Bar "had an accounting for the transporting and freighting of the goods, wares and merchandise aforesaid, and there was then found due from said Bar to plaintiff on account thereof the sum of one thousand dollars; that Bar then drew his order or draft on the defendant, requesting him to pay the plaintiff that sum, and charge the same to his (Bar's) account, and delivered the same to the plaintiff," who, "in consideration of the defendant's said promise and agreement to pay the same, accepted and received the said order or draft from the said A. Bar in payment of the said sum of one thousand dollars, due to him as aforesaid from the said A. Bar for freight and transportation of said goods, wares and merchandise;" that he presented said order or draft to the defendant and demanded payment, but the defendant refused and still refuses to pay said sum of money or any part thereof; that neither said defendant nor said Bar have paid said sum; and that the plain-

tiff is the " owner and holder of said indebtedness and entitled to receive the amount due thereon from the defendant."

It thus clearly appears that the agreement upon which the action was brought, was the agreement of the defendant to pay the order or draft of Bar. There is no allegation that the defendant promised to pay for the transportation of the goods, or was to become liable therefor in any event, nor that the transportation at any specified price, or at a reasonable price, amounted to any sum of money; but the promise was to pay such order or draft as Bar might draw on him on account of the transportation. His liability upon his promise did not begin until Bar had drawn his order, and it was contingent upon its being drawn. If an order had not been drawn by Bar, it could not be claimed that the defendant would be liable on his contract, as it is stated in the complaint; and when the order was drawn that measured the extent of the defendant's responsibility, if he is responsible at all.

There is no question that it is competent for the forwarder to contract for the transportation of goods, and assume a direct liability for the cost of transportation, and that the parties to the contract may agree—as the plaintiff contends they have done in this case—that the sum determined upon by the person performing the service and the person to whom the goods are to be delivered, shall be. the charges for transportation, and that the amount of the charges so agreed upon may be evidenced by an order drawn by the owner of the goods upon the forwarder, as well as by any other means the parties may agree upon. But such an· agreement is essentially different from the one set up in the complaint.

It is said that the credit was given to the defendant and that it was not intended that Bar should be liable to the plaintiff—the order operating between the plaintiff and defendant merely as the measure of the defendant's liability; the answer is that the complaint states that Bar became indebted to the plaintiff for transporting the goods, and delivered the order in question to the plaintiff for the purpose of satisfying his debt to the plaintiff; and it would be difficult to under-

stand how Bar could become indebted to the plaintiff for services performed by the plaintiff at the request of the defendant, and in consideration of his direct promise to pay the plaintiff for such services. And it may again be added that the defendant did not obligate himself to pay for the transportation of the goods, but he promised to pay any order or draft that Bar might draw on him, on the account, as we understand from the several allegations of the complaint, of his (Bar's) indebtedness accruing to the plaintiff for transporting the goods.

The construction we have given to the contract as stated in the complaint is fully sustained by the plaintiff's evidence. On cross examination of the plaintiff this question was asked: " The only agreement that was made between you and Greenhood in reference to the payment of anything, was that he would accept and pay any draft that Bar might draw upon him or the San Francisco house for this freight?" And his answer was, " Upon him or the San Francisco house he would pay the draft or check." Another witness states that the defendant said "we could collect whatever was convenient for them to pay, and to accept an order on him or Levi Brothers, in San Francisco, and he would pay the same on either when we returned." The testimony of another witness was to the same effect. It also appears from the evidence that the transportation amounted to about seventeen hundred dollars, and that at the time of the delivery of the goods Bar paid the plaintiff between six hundred dollars and seven hundred dollars of that amount, and that the plaintiff settled with Bar respecting the transportation and certain damages growing out of the transportation, and that he never made any settlement with the defendant.

If the construction we have given to the complaint is the correct one—that the promise of the defendant was that he would pay any order or draft that Bar might draw on him for the transportation of the goods, and that such payment was to be made on the account of Bar—neither argument nor authority is required to prove that the plaintiff cannot recover

unless he makes it appear that the promise was reduced to writing and signed by the defendant. No promise in writing to pay the order was offered in evidence, or appears to have been made, and we therefore hold that the Court below erred in refusing the new trial.

Judgment reversed and the cause remanded for a new trial.

SAWYER, J., dissenting.

I think the contract sued on was defendant's own contract, and not a promise to answer for the debt, default or miscarriage of another. I am, therefore, compelled to dissent.