PEOPLE, PLAINTIFF AND APPELLEE, *v.* LANGE, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in a Prosecution for Aggravated Assault and Battery.

No. 895.—Decided June 24, 1916.

ATTEMPT TO COMMIT MURDER—AGGRAVATED ASSAULT—INFORMATION.—An information alleging that the accused wilfully, criminally and with malice aforethought attacked a certain person with a firearm and fired three shots at

him with the intent then and there to commit murder, alleges facts constituting the crime of attempted murder as well as aggravated assault.

ID.—ID.—FIREARM—DEADLY WEAPON.—In order to charge the crime of aggravated .assault it is not necessary to specify in an information for attempted murder when the weapon employed is a firearm that it was charged with powder and ball; nor is it necessary to allege that the weapon was a deadly one if from the context of the information both facts clearly appear.

ID.—EVIDENCE—IDENTIFICATION—UNPREJUDICIAL ERROR.—The testimony of a *fiscal* regarding the examination made by him of an automobile in connection with the crime may be admitted in evidence subject to the identification of the same by other evidence during the trial; and if said evidence is presented the error which the court may have committed in admitting said testimony, including some hearsay evidence, would be corrected and not prejudicial.

The facts are stated in the opinion.

*Mr. Herminio Díaz Navarro* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant, appellant, was convicted of aggravated assault under an information for attempt to kill charging the facts as follows:

"On a date prior to the filing of this information, on or about February 16, 1914, in the city of Mayagüez of the judicial district of the same, the said Rafael U. Lange wilfully, criminally and with malice aforethought attacked Pedro Perea Fajardo with a firearm, firing at him three times with the said firearm with the intention then and there to commit murder, etc."

A demurrer interposed on the ground that the facts stated do not constitute the offense charged was properly overruled by the court.

After verdict defendant moved to dismiss for reasons stated as follows:

"1. At the trial of this case the accused demurred to the information on the ground that it did not allege facts sufficient to constitute the crime of attempt to kill with intent to commit murder nor even of aggravated assault and battery, inasmuch as the information did not allege that the firearm used by the accused was a deadly weapon, or that the accused shot at the person of the attacked, or what was the injury done to the attacked, or if no injury were done to him, why not. The demurrer was overruled by the court and after trial the jury found the accused guilty of aggravated assault.

"2. The accused alleges that the information in this case is defective according to section 153 of the Code of Criminal Procedure in relation to section 218 of the Penal Code and subdivision 8 of section 6 of the 'Act to define and punish the crime of assault and battery,' approved March 19, 1904, and that therefore the said information is insufficient to support a judgment of aggravated assault."

In overruling this motion the trial court said:

"It is alleged in the information that the victim was attacked by the accused with a firearm. If nothing more had been alleged this could not be considered a deadly weapon, but the information adds, 'firing at him three times with the said firearm,' which clearly supplies the elements necessary to be alleged in the information in order to deduce that the arm used was a deadly weapon. Another ground which the court wishes to add is that a firearm fired at a person is presumed to have been loaded. And in support of this the court cites the case of *Lakran* v. *State,* 45 Tex. Crim. Rep. 87. For these reasons the court overrules the motion."

Before sentence was pronounced defendant moved for a new trial on the following grounds:

"1. Errors of law committed by the court during the trial and excepted to by the accused.

"2. That the verdict of the jury is contrary to law and to the evidence introduced and is, therefore, null and void."

There is no very formal or specific assignment of error. The brief on appeal is a substantial reproduction of the argument before the trial court disposed of in the ruling on the motion to dismiss, *supra.* It is urged that the information must specify the weapon used and if a firearm that it was charged with powder and ball; that the same must allege in some way that the firearm was a deadly weapon; that a firearm is not necessarily a deadly weapon inasmuch as a cap-pistol in the hands of a child is a firearm; and that the district court erred in overruling the demurrer interposed at the trial. The only cases cited upon this proposition are *People* v. *Jacobs,* 29 Cal. 599, and *People* v. *Congleton,* 44 Cal. 92, neither of which can be said to hold that a man who "armed

with a firearm attacks'' another, "firing at him three shots from such firearm, with intention then and there to commit murder,'' does not commit an assault with a "deadly weapon.''

The only other point we need notice is the contention that the testimony of the *fiscal*, Angel Acosta Quintero, is purely hearsay and that the court below, in refusing to strike the same on motion of defendant, committed prejudicial error.

The testimony referred to is as follows:

"My name is Angel Acosta Quintero. I am a lawyer and *fiscal* of the judicial district of Mayagüez, which position I held also in February of 1914. I know Dr. Lange very well. He is my particular friend and my physician. In the month of February of 1914 I examined an automobile in which Dr. Perea was riding on the occasion of an incident which occurred that day and I could see a dent in the bonnet of the automobile on the right side. I also saw a hole in the right side of the top which coincided with another hole in the opposite side of the top and another hole in the celluloid window in the back part of the car. I do not know whether the car had this dent and the holes before. In answer to questions by the defense: I saw this automobile on the 16th day of February, if my memory is not wrong. I was in my house and Dr. Perea, Mr. Castro and Mr. Valdés came to report the incident to me. They showed me the automobile and I also examined it on the following day in company with Capt. Silén. Mr. Valdés told me that the automobile belonged to him and that it was the automobile they were riding in when the act was committed. I made another examination in the house of Dr. Lange. In answer to questions by the *fiscal:* I cannot say whether the car was stopped near the house of Dr. Lange, but I examined it in front of my house and on the following day I took an automobile because I wanted to examine the automobile of Mr. Valdés more carefully and when I was going to the Central Ana María with Capt. Silén we met Mr. Valdés and on the road to Añasco I again examined the automobile.''

At the time this testimony was given, Manuel Paz, the chauffeur, and Valdés, Castro and Perea, who were in the car at the time of the assault, had also testified to the *res*

*gestæ,* including the perforation of the car by the three bullets from the pistol of defendant; and Valdés and Perea had both located the bullet holes in the different parts of the car, substantially as specified by Acosta Quintero. After the motion to strike the testimony of the *fiscal,* however, Perea was recalled and testified as follows:

"On the 16th of February I had occasion to be present when Mr. Acosta Quintero examined the automobile of Mr. Alfonso Valdés in which I was riding with Mr. Valdés when Dr. Lange fired the shots at me. I do not know whether the *fiscal* saw the car a second time after he saw it in my presence, but when I went to his house to report to him what had occurred to me, I had him come out to see the car. That was the same car in which I was riding with Mr. Valdés and the same one which received the shots that afternoon. On cross-examination by the defense: I was being taken to my house that afternoon and on the way we stopped at the house of the *fiscal* who lives a little up the street from me and we reported to him what had occurred. I do not remember having stopped at any other place before going to the house of the *fiscal.* When we were going to my house Miguel Castro, the chauffeur and I were in the automobile and I do not remember whether there was a policeman with us also. I believe that Valdés was with us also but cannot be certain. I was in such a state of mind that after the shots were fired I do not remember much of the incident. I remember that when I was going to the house of Dr. Lange Mr. Alfredo Kopish stopped me, but I do not remember anything more or whether he went to my house with me. There were many people in my house but I do not remember whether he went in the automobile."

What the *fiscal* said about the actual examination made by him of a certain automobile and the result thereof was not hearsay. The ownership of the car was not material and any doubt as to the identity thereof as the machine in which Valdés, Perea and Paz were traveling at the time of the assault was at once cleared up by the testimony of Perea. Perhaps the court should have either stricken the testimony at the time of the motion or else required the *fiscal* to state that the identity of the car examined by him would be established by other evidence, in which event the admission of

the testimony in question subject to such condition would have been entirely proper. Testimony tending to show such identity having been introduced forthwith, the error, if any, was cured or at least rendered harmless.

We find no reversible error in the record and the judgment must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.

On July 26, 1916, a motion for reconsideration was overruled.